**PPX ENTERPRISES, INC., Mod Music, Inc., and J.H. Records, Inc., Plaintiffs,**

**PPX Enterprises, Inc., Plaintiff-Appellant,**

**v.**

**AUDIOFIDELITY ENTERPRISES, INC. and Dante J. Pugliese, Defendants-Appellees.**

**No. 587, Docket Nos. 86–7704, 86–7900.**

United States Court of Appeals, Second Circuit.

Argued Jan. 13, 1987.

Decided May 5, 1987.

Ronald L. Skoler, New York City, for plaintiff-appellant.

Jeanne A. Glasser, New York City (Martin E. Silfen, Silfen & Glasser, P.C., New York City, of counsel) for defendants-appellees.

Before NEWMAN, MINER and MAHONEY, Circuit Judges.

MINER, Circuit Judge:

Plaintiff-appellant PPX Enterprises, Inc. ("PPX") appeals from a judgment entered in the United States District Court for the Southern District of New York (Stanton, J.) in favor of defendant-appellee Audiofidelity Enterprises, Inc. ("Audiofidelity"), on its motion for judgment n.o.v. regarding appellant's claims for damages under the Lanham Act, 15 U.S.C. § 1125(a) (1982), and for tortious interference with prospective economic advantage. PPX also appeals from the denial of attorney's fees.

PPX, a corporation with financial interests in sales of records featuring the late rock musician Jimi Hendrix, asserted claims for injunctive relief and damages under the Lanham Act, as well as state law claims, based on Audiofidelity's marketing of eight albums purporting to feature Hendrix performances, but which did not contain such performances. Although Judge Stanton granted injunctive relief under the Lanham Act, he determined that PPX was not entitled to damages because appellant had failed to provide evidence of actual consumer confusion. Judge Stanton also overturned the jury verdict in favor of PPX on its tortious interference with prospective economic advantage claim. On appeal, PPX contends that there was sufficient support for the special verdict in its favor on its tortious interference claim and on its claim for damages under the Lanham Act. PPX also challenges the denial of attorney's fees. Audiofidelity does not challenge the injunctive relief awarded. We affirm the district court's judgment as to the tortious interference with prospective economic advantage claim. However, because we hold that, under the circumstances of this case, PPX should not have been required to provide evidence of actual consumer confusion, we reverse the judgment as to PPX's claim for damages under the Lanham Act and vacate as to attorney's fees, and remand for proceedings consistent with this opinion.

## I. BACKGROUND

PPX, a New York corporation, acquires and licenses rights to master recordings of musical performances. PPX has financial interests in sales of recordings featuring the late rock musician Jimi Hendrix. Audiofidelity, whose president, chairman and sole stockholder is Dante J. Pugliese, manufactures, distributes and licenses phonograph records. Audiofidelity marketed eight albums purporting to contain feature performances by Jimi Hendrix, but which either did not contain Hendrix performances at all or contained performances in which Hendrix was merely a background performer or undifferentiated session player.

Appellant and two other companies not present in this appeal brought suit in the district court, asserting claims under the Lanham Act, 15 U.S.C. § 1125(a) (1982), and New York's anti-dilution statute, New York Gen.Bus.Law § 368–d (McKinney 1984), as well as common law claims of tortious interference with prospective economic advantage and breach of an obligation to pay royalties. The question of appellant's standing to sue was resolved in favor of appellant by a panel of this court in 1984. *See PPX Enterprises v. Audiofidelity, Inc.,* 746 F.2d 120 (2d Cir.1984).

Trial commenced in the district court on May 13, 1986, before a jury. The parties stipulated that the issue of liability would be tried before the jury and that damages would be determined by a magistrate at a subsequent trial, if needed. Prior to the taking of testimony, PPX withdrew its claim for breach of an obligation to pay royalties. At the conclusion of PPX's case, defendants moved for a directed verdict. The district court granted the motion as to Pugliese, a ruling PPX does not contest on appeal, and reserved decision as to Audiofidelity. Audiofidelity renewed its motion for a directed verdict at the conclusion of its case, and the district court again reserved decision.

The liability issues were given to the jury in the form of a special verdict. The jury returned a special verdict in favor of PPX on the Lanham Act and tortious interference claims. The jury gave an affirmative answer to the question: "Do you find a substantial number of consumers were actually confused by the defendant's false or misleading descriptions or representations on [its] records or albums?" A special verdict, which PPX does not contest on appeal, was returned in favor of Audiofidelity on the anti-dilution claim.

On June 5, 1986, the district court, treating Audiofidelity's renewal of its motion for a directed verdict as a motion for judgment n.o.v., *see* Fed.R.Civ.P. 50(b), granted Audiofidelity's motion with respect to PPX's claim for damages under the Lanham Act and its claim for tortious interference with prospective economic advantage. Although Judge Stanton accepted the jury's finding that Audiofidelity used false or misleading descriptions or representations on its albums, he determined that PPX was not entitled to damages under the Lanham Act because PPX had not introduced evidence to show "directly or by inference that any purchaser of [Audiofidelity's] records was actually deceived or misled by their labeling." Joint App. at 1215. Judge Stanton granted the motion for judgment n.o.v. on PPX's tort claim, based on his determination that PPX had failed to show that Audiofidelity's actions were criminal or fraudulent, or that the lost economic advantage was reasonably likely to have occurred absent Audiofidelity's interference. Judge Stanton denied the motion with respect to PPX's claim for injunctive relief under the Lanham Act.

On August 27, 1986, the district court issued an injunction prohibiting the further sale of ersatz Jimi Hendrix albums without a disclaimer, requiring Audiofidelity to repurchase current stocks of its albums from wholesale and retail purchasers, and requiring Audiofidelity to publicize its return policy in music industry magazines. By order dated October 15, 1986, the district court denied PPX's request for attorney's fees. This appeal followed.

## II. DISCUSSION

### A. *Tortious Interference with Prospective Economic Advantage Claim*

PPX's common law claim has been referred to variously by the parties and the district court as tortious interference with: prospective economic advantage, beneficial business relations, prospective business advantage, and business or economic relations. Regardless of the appellation employed, the elements necessary to establish such a claim remain constant. *Martin Ice Cream Co. v. Chipwich, Inc.,* 554 F.Supp. 933, 945 (S.D.N.Y.1983). In order to prevail on a claim of tortious interference with prospective economic advantage, a plaintiff is required to show "the defendant's interference with business relations existing between the plaintiff and a third party, *either* with the sole purpose of harming the plaintiff *or* by means that are 'dishonest, unfair or in any other way improper.'" *Id.* (quoting *Robbins v. Ogden Corp.,* 490 F.Supp. 801, 811 (S.D.N.Y. 1980)). If the defendant's interference is intended, at least in part, to advance its own competing interests, the claim will fail unless the means employed include criminal or fraudulent conduct. *Nifty Foods Corp. v. Great Atlantic & Pacific Tea Co.,* 614 F.2d 832, 838 (2d Cir.1980); *Strapex Corp. v. Metaverpa N.V.,* 607 F.Supp. 1047, 1050 (S.D.N.Y.1985).

Although the district court overturned the jury verdict on this claim because PPX had not shown fraudulent or criminal conduct and resultant damages, we need not reach those issues because we find that PPX has failed to establish an essential element of its claim for tortious interference. PPX alleged that, "by virtue of the actions of [Audiofidelity] in producing and distributing these records which purport to be Jimi Hendrix [records] and are not, ... PPX's rights to prospective economic advantage have been interfered with, in that royalties, sales and so forth are going to be affected...." Joint App. at 758. PPX attempted to rely on the contract between the president of PPX and Jimi Hendrix, *id.* at 757, as the predicate, underlying relationship to support its claim.

PPX claims only that Audiofidelity "interfered" with the benefits resulting from its business relations. PPX has failed to allege, much less prove, that Audiofidelity interfered in any way with the underlying business relationship existing between PPX and the late Jimi Hendrix and his successors in interest.

The district court's charge to the jury made clear that, in order to prevail on this tort claim, PPX must prove, *inter alia,* that "the defendant interfered with some contract or business relation between the plaintiff and someone else, and that the defendant knew about that contract or relationship." *Id.* at 877–78. Here, the underlying business relations remained undisturbed. *Cf. Cosmopolitan Film Distributors, Inc. v. Feuchtwanger Corp.,* 226 N.Y. S.2d 584, 591 (Sup.Ct.1962) ("Whatever the nature of the business relationship claimed to have been disturbed ... some act of interference or inducement, at least, by a third party must be shown before he can be held liable for inducing breach or termination of that relationship."). Therefore, PPX's claim was fatally defective. In addition, we note that a claim of tortious interference with prospective economic advantage usually involves interference with a "business relationship not amounting to a contract," 32 N.Y.Jur. *Interference* § 40 (1963), resulting in a breach, *see Fox v.*

*Congel,* 75 A.D.2d 681, 426 N.Y.S.2d 878 (1980), or severance of the relationship itself, *see Strapex Corp.,* 607 F.Supp. at 1050–51, or at least some injury to that relationship. We fail to see how "interference" with the benefits derived from a relationship that leaves the relationship itself unchanged in any way can also constitute interference with the underlying business relations. Therefore, we hold that PPX failed to establish an essential element of its claim for tortious interference with prospective economic advantage and we affirm the district court's grant of judgment n.o.v. in favor of Audiofidelity on the aforementioned ground.

**B. Lanham Act Claim**

Section 43(a) of the Lanham Act provides, in pertinent part, that

[a]ny person who shall affix, apply, or annex, or use in connection with any goods, ... any false description or representation, including words or other symbols tending falsely to describe or represent the same ... shall be liable to a civil action ... by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

15 U.S.C. § 1125(a) (1982). Although early judicial interpretations of this section restricted its applicability, *see* Bauer, *A Federal Law of Unfair Competition: What Should Be the Reach of Section 43(a) of the Lanham Act?,* 31 UCLA L.Rev. 671, 682–85 (1984), section 43(a) subsequently has been employed successfully to combat a wide variety of deceptive commercial practices. *See, e.g., Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.,* 604 F.2d 200 (2d Cir.1979) (misappropriating cheerleader uniform in sexually-explicit film); *RJR Foods, Inc. v. White Rock Corp.,* 603 F.2d 1058 (2d Cir.1979) (imitating trade dress of established, competitive fruit punch); *American Home Products Corp. v. Johnson & Johnson,* 577 F.2d 160 (2d Cir.1978) (presenting false and misleading claims in comparative advertising of analgesics); *Gilliam v. American Broadcasting Cos.,* 538 F.2d 14 (2d Cir.1976) (presenting garbled version of plaintiffs'

comedy program to public); *Vuitton Et Fils, S.A. v. Crown Handbags,* 492 F.Supp. 1071 (S.D.N.Y.1979) (distributing imitation Vuitton handbags), *aff'd mem.,* 622 F.2d 577 (2d Cir.1980); *Benson v. Paul Winley Record Sales Corp.,* 452 F.Supp. 516 (S.D.N.Y.1978) (deceptive marketing of old records of newly successful recording artist); *see also, e.g., Camel Hair & Cashmere Inst. v. Associated Dry Goods Corp.,* 799 F.2d 6 (1st Cir.1986) (mislabeling of coats that overstated their cashmere content); *Smith v. Montoro,* 648 F.2d 602 (9th Cir.1981) (substituting false name in film credits and advertising); *Boston Professional Hockey Ass'n v. Dallas Cap & Emblem Mfg.,* 510 F.2d 1004 (5th Cir.) (unlicensed manufacturing of emblems and insignias of professional hockey teams), *cert denied,* 423 U.S. 868, 96 S.Ct. 132, 46 L.Ed.2d 98 (1975). *See generally* Pattishall, *The Lanham Trademark Act—Its Impact Over Four Decades,* 76 Trademark Rep. 193 (1986).

■■■ In cases brought under 15 U.S.C. § 1125(a), courts traditionally have distinguished the standard that must be met to state a claim for injunctive relief from the standard necessary to establish entitlement to damages. *See* 1 J. Gilson, Trademark Protection and Practice § 7.02[3], at 7–26.2 to –27 (1985 & Supp.1986). In order to state a claim for injunctive relief, plaintiffs must demonstrate a likelihood of deception or confusion on the part of the buying public caused by the false description or representation. *E.g., Burndy Corp. v. Teledyne Indus.,* 748 F.2d 767, 772 (2d Cir. 1984); *Coca-Cola Co. v. Tropicana Products, Inc.,* 690 F.2d 312, 316 (2d Cir.1982). Plaintiffs normally have a greater burden in attempting to establish entitlement to damages for violation of section 43(a): They must establish actual consumer confusion or deception resulting from the violation. *E.g., Warner Bros., Inc. v. Gay Toys, Inc.,* 658 F.2d 76, 79 (2d Cir.1981); *DC Comics, Inc. v. Filmation Assocs.,* 486 F.Supp. 1273, 1279 (S.D.N.Y.1980). Actual consumer confusion often is demonstrated through the use of direct evidence, e.g., testimony from members of the buying public, as well as through circumstantial evidence, e.g., consumer surveys or consumer reaction tests. *See U–Haul Int'l, Inc. v. Jartran, Inc.,* 601 F.Supp. 1140, 1149 (D.Ariz.1984), *aff'd in part, modified in part and rev'd in part on other grounds,* 793 F.2d 1034 (9th Cir.1986). Although the quantum of damages, as distinguished from entitlement, must be demonstrated with specificity, *Monsanto Chemical Co. v. Perfect Fit Products Mfg. Co.,* 349 F.2d 389, 392 (2d Cir.1965) ("a monetary award, whether in the form of damages or an accounting, is justified only to the extent that injury is shown already to have been suffered"), *cert. denied,* 383 U.S. 942, 86 S.Ct. 1195, 16 L.Ed.2d 206 (1966), courts may engage in "some degree of speculation in computing the *amount* of damages, particularly when the inability to compute them is attributable to the defendant's wrongdoing." *Burndy,* 748 F.2d at 771 (citing *Stevens Linen Assocs. v. Mastercraft Corp.,* 656 F.2d 11, 14–15 (2d Cir. 1981)).

Audiofidelity contends that because PPX concededly has made no evidentiary showing of actual consumer confusion or deception, PPX has failed to prove its entitlement to damages under the Lanham Act. In support of its contention, Audiofidelity relies on cases in which a defendant's product was confusingly similar to a plaintiff's product. The crucial inquiry in those cases, however, was whether consumers actually mistook the defendant's product for the plaintiff's. *See, e.g., DC Comics, Inc. v. Filmation Assocs.,* 486 F.Supp. 1273 (S.D.N.Y.1980) (plaintiff comic book marketer failed to demonstrate actual consumer confusion between its characters, "Aquaman" and "Plastic Man," and defendant film animator's characters, "Manta and Moray" and "Superstretch"). The case before us is easily distinguishable from cases such as *DC Comics.* Here, the jury found, and Judge Stanton agreed, that Audiofidelity's recordings, through their design, labeling and album covers, purported to contain feature performances of Jimi Hendrix, when in fact they did not. *See* Joint App. at 1214a–15. Thus, the central issue was not whether Audiofidelity's re-

cordings were confusingly similar to PPX's, so that the consuming public would become confused as to the origin or source of Audiofidelity's albums. Rather, the jury found that Audiofidelity had misrepresented the nature and quality of its recordings through the "representations associated with [Audiofidelity's] records," *id.* at 1215, to the detriment of PPX.

■ The jury's finding makes clear that PPX's claim of injury arises from Audiofidelity's misleading packaging of its products, and therefore more appropriately can be characterized as a claim of false advertising under the Lanham Act, rather than misrepresentation as to source, or "palming off." A record album's cover, bearing the name and likeness of a performer, is one of the primary means of advertisement for a record album, particularly when, in the normal retail situation, "a customer has no way of hearing the record prior to purchase." *CBS, Inc. v. Gusto Records, Inc.,* 403 F.Supp. 447, 449 (M.D.Tenn.1974).

■ False advertising clearly encompasses fraudulent representations that goods marketed have "ingredients or qualities" that they, in fact, do not have but that the goods of a competitor do have. *L'Aiglon Apparel, Inc. v. Lana Lobell, Inc.,* 214 F.2d 649, 651 (3d Cir.1954) (quoting Restatement of Torts § 761 (1934)), *cited with approval in Alfred Dunhill Ltd. v. Interstate Cigar Co.,* 499 F.2d 232, 236 (2d Cir.1974). In the case before us, Audiofidelity fraudulently represented that eight albums it marketed contained performances featuring Jimi Hendrix, when they did not. PPX has interests in albums containing such performances. Therefore, PPX's allegation that Audiofidelity's recordings "tend to create confusion among consumers," Complaint at 3, sufficiently states a claim of false advertising under the circumstances of this case, and the jury's finding of actual confusion caused by Audiofidelity's misrepresentations is consistent with this claim.

■ In *American Home Products Corp. v. Johnson & Johnson,* 577 F.2d 160 (2d Cir.1978), we noted that "[d]eceptive advertising or merchandising statements

may be judged in various ways. If a statement is actually false, relief can be granted on the court's own findings without reference to the reaction of the buyer or consumer of the product." *Id.* at 165 (dicta) (quoting *American Brands, Inc. v. R.J. Reynolds Tobacco Co.,* 413 F.Supp. 1352, 1356 (S.D.N.Y.1976)); *see Camel Hair & Cashmere Inst. v. Associated Dry Goods Corp.,* 799 F.2d 6, 15 (1st Cir.1986); *cf. Avis Rent A Car Sys., Inc. v. Hertz Corp.,* 782 F.2d 381, 386 (2d Cir.1986); *Coca-Cola Co. v. Tropicana Products, Inc.,* 690 F.2d 312, 317 (2d Cir.1982). Although the above-quoted language has been applied solely to claims for injunctive relief under the Lanham Act, *see Max Daetwyler Corp. v. Input Graphics, Inc.,* 608 F.Supp. 1549, 1552 (E.D.Pa.1985), we perceive no reason why the same logic should not apply in regard to claims for damages, given the circumstances of this case. The jury's conclusion that consumers actually were deceived by Audiofidelity's misrepresentations is supported by the false advertising contained on the record albums and the fact that Audiofidelity successfully sold the albums on the market. Given the egregious nature of Audiofidelity's actions, we see no need to require appellant to provide consumer surveys or reaction tests in order to prove entitlement to damages. The only possible conclusion to be derived from Audiofidelity's conduct was that consumers actually were deceived by the misrepresentations. This is the same conclusion implicitly reached in several cases involving counterfeit Louis Vuitton products, in which plaintiffs appear to have established entitlement to damages absent an evidentiary showing of actual consumer confusion or deception. *See Louis Vuitton S.A. v. Spencer Handbags Corp.,* 597 F.Supp. 1186, 1189 (E.D.N.Y.1984), *aff'd,* 765 F.2d 966 (2d Cir.1985); *Vuitton Et Fils, S.A.,* 492 F.Supp. at 1077. As one commentator has noted, the distinction drawn between stating a claim for injunctive relief and establishing entitlement to damages has less relevance in the context of false advertising: "Having established falsity, the plaintiff should be entitled to both injunc-

tive and monetary relief, regardless of the extent of impact on consumer purchasing decisions. It is reasoning backwards to permit the kind of relief the plaintiff is seeking to affect the underlying characterization of the defendant's conduct." Bauer, *supra*, at 744 n. 277. Indeed, that no consumers have complained merely is testament to the efficacy of Audiofidelity's fraud.

In sum, we hold that, under the circumstances of this case, PPX should not have been required to provide evidence of actual consumer confusion by resort to witness testimony, consumer surveys, or other such evidence in order to establish entitlement to damages under the Lanham Act. Audiofidelity's products were patently fraudulent, and the advertising accompanying those products was the vehicle employed to perpetrate the fraud. In order to assist the magistrate in measuring damages, appellant will, of course, be required to provide "an evidentiary basis on which to rest such an award." *Vuitton Et Fils, S.A.*, 492 F.Supp. at 1077. We express no opinion regarding what damages, if any, PPX is entitled to under the circumstances of this case. In addition, because the district court's denial of PPX's motion for attorney's fees may well have been based, in part, on its disposition of PPX's claim for damages under the Lanham Act, we vacate the district court's order regarding attorney's fees and remand for reconsideration at the conclusion of the trial on damages.

## III. CONCLUSION

Based on the foregoing, we hold that PPX has failed to establish its claim for tortious interference with prospective economic advantage under New York law, but has demonstrated its entitlement to damages under the Lanham Act. We therefore affirm the district court's judgment n.o.v. in favor of Audiofidelity on PPX's common law claim. The judgment is reversed on PPX's Lanham Act damages claim, and we remand to the district court for further proceedings consistent with this opinion as to that claim. We vacate the district court's denial of attorney's fees in order to allow reconsideration at the conclusion of the trial on damages.