**RESOURCE DEVELOPERS, INC.,**
**Plaintiff–Appellant,**

v.

**The STATUE OF LIBERTY–ELLIS IS-LAND FOUNDATION, INC., Hamilton Projects, Inc., Dettra Flag Company, Inc. and Harbor Festival Foundation, Defendants–Appellees.**

**No. 590, Docket 90–7585.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 14, 1990.

Decided Feb. 11, 1991.

Harry E. Youtt (I. Michael Bak–Boychuk, Long Beach, Cal., of counsel), for plaintiff-appellant.

Francis D. Landrey (Alexander H. Schmidt, Proskauer Rose Goetz & Mendelsohn, New York City, of counsel), for defendants-appellees.

Before FEINBERG, TIMBERS and MINER, Circuit Judges.

MINER, Circuit Judge:

Appellant Resource Developers, Inc. ("Resource") appeals from a summary

judgment entered in the United States District Court for the Southern District of New York (Haight, *J.*), dismissing its claims against Dettra Flag Company ("Dettra"), asserted under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1988), for unfair competition and dismissing its pendent state law claim against Dettra for inducing the breach of a licensing agreement between the Statue of Liberty–Ellis Island Foundation ("Foundation") and Resource. On appeal, Resource contends that the district court misapplied the law because it applied legal principles pertaining to product infringement claims instead of the legal standards for false advertising. Resource also argues that summary judgment was inappropriate because the evidence supported a finding that Dettra intentionally sought to convey the false impression that its flags were officially endorsed by the Foundation. Finally, Resource maintains that the district court erred in requiring it to prove actual consumer confusion in order to succeed in an action for money damages. Resource argues that it presented evidence of intent to deceive and therefore a showing of actual consumer confusion was unnecessary.

We reject the arguments advanced by Resource and affirm the summary judgment entered in favor of Dettra.

## BACKGROUND

Resource sells to retail stores items such as flags, banners and pennants. Dettra has been manufacturing and distributing flags and similar items since 1901. The Statue of Liberty–Ellis Island Foundation was organized for the sole purpose of raising funds from the public for the restoration of the Statue of Liberty. To that end, the Foundation designed a logo, a highly stylized portrayal of the neck, head and crown of the Statue of Liberty, which was registered under the federal trademark and copyright laws. Additionally, the Foundation entered into licensing agreements with various licensees who, for consideration or royalty payments, obtained the right to publicly represent the Foundation and to use its symbols and marks on goods cover-ed by the licensing agreement. The licensing program was coordinated by Hamilton Products, Inc. ("Hamilton") as agent for the Foundation. In the spring of 1984, Resource entered into negotiations with the Foundation culminating in the signing of a licensing agreement. As an official licensee, Resource was entitled to use exclusively the official logo of the 1986 Statue of Liberty commemoration for the retail marketing of flags, pennants and banners.

On August 17, 1984 representatives of Resource, including John Boyko, general counsel of Resource, met with William Spangler, president of Dettra, to discuss the possibility of retaining Dettra as fabricator of Resource's commemorative flags, banners and pennants. During that meeting, Boyko showed Dettra representatives various flag, banner and pennant designs that it was contemplating producing. Spangler and Dettra's vice president, Joe McIntyre, advised Resource that flags were more marketable than the other two items. Apparently recognizing the country of origin of the Statue of Liberty, McIntyre suggested a flag design with a tri-color background resembling the French flag. The parties agreed that Dettra would produce sample flags to be presented to Foundation officials for approval.

There was a second meeting on September 6, 1984 during which Boyko examined the sample flags. Boyko informed the Dettra representatives that he would contact them after receiving authorization from the Foundation to begin production of the proposed flag. Because no further communication was received from Resource, Dettra sent a letter to Resource on October 15, 1984 explaining that it could not manufacture the flags until it received authorization. In November, Dettra learned that Resource had obtained its flags from another manufacturer.

Prior to learning that Resource had retained another flag manufacturer, Dettra had mailed on October 9, 1984 a "Dettragram," a bi-annual advertising circular, to about 4,500 of its regular customers. On the top left corner of one page of the Dettragram was a picture of the Statue of

Liberty superimposed on the American flag. To the right of the Statue was the message, "The Famous Lady in the Harbor Needs Our Help." Just below the message was a printed contribution form addressed to the Foundation. The following paragraph appeared to the left of the contribution form:

> As a manufacturer of U.S. flags and other symbols of freedom, Dettra Flag Company is specially [sic] proud to have made a contribution to this noble cause. Join us in this effort to help "KEEP THE TORCH OF LIBERTY LIT", please send your contribution today.

In late February of 1985, Dettra sent a letter to between 50 and 100 of its customers, announcing the creation of its own liberty flag. The letter, and the attached price list, provided that Dettra would contribute to the Foundation ten percent of the net proceeds received from sales of its liberty flag. An amended price list, dated March 1, 1985, provided that although Dettra's

> LIBERTY FLAGS [were] not officially endorsed by the Statue of Liberty–Ellis Island Foundation, [it would] contribute 10% of the NET PRICE of all LIBERTY FLAG sales to the Foundation.

Dettra's liberty flag contained a realistic representation of the upraised arm and torch, crown and upper body of the Statue of Liberty against a tri-color background.

Upon learning of Dettra's campaign on behalf of the Foundation and its restoration efforts, the Foundation wrote to Dettra, complaining that Dettra "falsely implie[d] an affiliation between [the two] organizations" and ordering Dettra to cease the unauthorized activity. Spangler wrote the Foundation, explaining that its efforts were "genuine and well intentioned" and assuring the Foundation that it would make "no further reference to the 'Foundation'" in any forthcoming literature. Dettra mailed to the Foundation a check, dated April 12, 1985, in the amount of $750, representing the ten percent of the proceeds from sales of its liberty flags promised in its February 1985 letter. The check was deposited by the Foundation through an affiliated organization and was followed up by a letter thanking Dettra for its contribution.

Resource brought this action in the Southern District of New York against several defendants, including the Foundation, Hamilton and Dettra. Resource alleged that Dettra made false representations with knowledge of the deceptive character of the representations and intent to deceive its customers. Resource also alleged that Dettra manufactured flags substantially like those produced by Resource. In its prayer for relief in the action against Dettra, Resource sought money damages for the loss of sales occasioned by Dettra's infringing flags and by Dettra's false advertising scheme. Dettra moved for summary judgment.

In its memorandum opinion and order dated May 16, 1990, the district court concluded that summary judgment for Dettra was warranted on the infringement claim because the only meaningful resemblance between the two logos was that both "evoke" the Statue of Liberty. After noting that the Statue is a generic mark and that Dettra thus is entitled to use it, the court found that Dettra's depiction of the Statue was not substantially similar to the Foundation's logo and that no likelihood of confusion resulted from it. Secondly, after noting that, in a section 43(a) action for money damages, the plaintiff bears the burden of proving actual consumer confusion, the court concluded that the record was devoid of any evidence of actual confusion and therefore summary judgment was appropriate on that issue. Finding no reason for delay, pursuant to Fed.R.Civ.P. 54(b), the court directed the entry of judgment on all claims pleaded against Dettra. Resource appeals from the judgment so entered. On consent of the parties, the action against the other defendants was stayed pending disposition on appeal.

## DISCUSSION

On appeal from a summary judgment, in determining whether there are genuine issues of material fact, we review the record *de novo*. *Twin Laboratories v. Weider*

*Health & Fitness,* 900 F.2d 566, 568 (2d Cir.1990) (citing Fed.R.Civ.P. 56(c)). Although the movant initially bears the burden of showing that there are no genuine issues of material fact, once such a showing is made, the party opposing a properly supported motion must "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Summary judgment is warranted where, "after adequate time for discovery . . ., [the nonmoving party] fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ Resource initially argues that it is entitled to a reversal because the district court applied incorrect legal standards. *Coca Cola Co. v. Tropicana Prods., Inc.,* 690 F.2d 312, 316 (2d Cir.1982). Resource asserts that the district court incorrectly viewed the case · as presenting a product infringement claim when it principally presents a false advertising claim. This argument is somewhat disinguous, since Resource alleged in its complaint that "Dettra began offering to the public flags and pennants substantially like those licensed by [Resource]." It may be true that Resource intended its principal claim to be the alleged false advertising by Dettra, but it cannot be said that Resource made no claim of product infringement in its complaint. Resource argues the product infringement issue on this appeal, in any event. The district court properly viewed the complaint, on a fair reading, as presenting both product infringement claims and false advertising claims; moreover, the court analyzed each claim under the appropriate legal standard.

■ Resource brought this action for money damages under section 43(a) of the Lanham Act, which provides, in pertinent part, that

> [a]ny person who shall affix, apply, or annex, or use in connection with any goods . . ., a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same . . . shall be liable to a civil action . . . by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

15 U.S.C. § 1125(a) (1982) (amended by Pub.L. No. 100–667, tit. I, § 132, 102 Stat. 3946 (1988), effective November 16, 1989). Although originally interpreted narrowly, section 43(a) now is considered to confer protection against a myriad of deceptive commercial practices. *PPX Enters., Inc. v. Audiofidelity Enters., Inc.,* 818 F.2d 266, 270 (2d Cir.1987) (citing cases). It principally provides for two distinct causes of action: false designation of origin or source, known as "product infringement," and false description or representation, known as "false advertising." *Johnson & Johnson v. Carter–Wallace, Inc.,* 631 F.2d 186, 188 (2d Cir.1980); *see also* Note, *Monetary Relief for False Advertising Claims Arising Under Section 43(a) of the Lanham Act,* 34 UCLA L.Rev. 953, 965 (1987).

■ When a plaintiff seeks money damages in either a product infringement case or a false advertising case asserted under section 43(a), the plaintiff must introduce evidence of actual consumer confusion. *E.g., PPX Enterprises,* 818 F.2d at 271–72; *Warner Bros., Inc. v. Gay Toys, Inc.,* 658 F.2d 76, 79 (2d Cir.1981). This requirement must be distinguished from cases brought under the Lanham Act in which only injunctive relief is sought; in those cases the plaintiff need only prove a likelihood of confusion among consumers. *PPX Enterprises,* 818 F.2d at 271.

■ Resource urges us to apply a presumption of consumer confusion upon a showing of deliberate or intentional deception on the part of the defendant, and thereby relieve it of the burden of coming forward with proof of actual consumer confusion. Relying on *My–T Fine Corp. v. Samuels,* 69 F.2d 76 (2d Cir.1934), Resource maintains that the presumption is old and venerated. In *My–T Fine Corp.,*

the defendant copied the plaintiff's pudding packaging and plaintiff brought an action for a preliminary injunction to bar defendant's use of the copied product. Even though there was no evidence of consumer confusion, the court shifted the burden to the defendant to prove the absence of confusion because of evidence of "defendants' intent to deceive." *Id.* at 77; *see, e.g., Spring Mills, Inc. v. Ultracashmere House, Ltd.,* 689 F.2d 1127, 1135–36 (2d Cir.1982) (injunctive relief sought in trade dress case); *McNeilab, Inc. v. American Home Prods. Corp.,* 501 F.Supp. 517, 529 (S.D.N.Y.1980) (injunctive relief sought in false advertising case).

Recognizing that in Lanham Act cases there is a significant difference in the proof requirements for injunctive relief as opposed to money damages, Resource cites *Mastercrafters Clock & Radio Co. v. Vacheron & Constantin–Le Coultre Watches, Inc.,* 221 F.2d 464 (2d Cir.), *cert. denied,* 350 U.S. 832, 76 S.Ct. 67, 100 L.Ed. 743 (1955) in support of its contention that the presumption applies to actions for money damages as well as actions for injunctive relief. In addition, it points out that other circuit courts have applied the presumption of confusion upon a showing of intent to deceive in actions for money damages. *See U–Haul Int'l, Inc. v. Jartran, Inc.,* 793 F.2d 1034, 1040–41 (9th Cir.1986); *AmBrit, Inc. v. Kraft, Inc.,* 812 F.2d 1531, 1542 (11th Cir.1986), *cert. denied,* 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 822 (1987); *see also* Restatement (Third) of the Law of Unfair Competition § 22 (Tent. Draft No. 2 March 23, 1990).

In *PPX Enterprises,* we allowed the recovery of money damages despite the absence of direct evidence of actual consumer confusion because the "products were patently fraudulent, and the advertising accompanying those products was the vehicle employed to perpetrate the fraud," 818 F.2d at 273, inferring actual consumer deception from the defendant's intentionally deceptive conduct. We think that this rationale applies equally to any situation where a plaintiff adequately demonstrates that a defendant has intentionally set out to deceive the public. Actual consumer

confusion is not easily established through direct evidence or even through use of consumer surveys or market research. It seems fair, therefore, that "[t]he expenditure by a competitor of substantial funds in an effort to deceive consumers and influence their purchasing decisions justifies the existence of a presumption that consumers are, in fact, being deceived." *U–Haul Int'l,* 793 F.2d at 1041. Given the "egregious nature" of deliberate conduct, "we see no need to require [Resource] to provide consumer surveys or reaction tests in order to prove entitlement to damages." *PPX Enterprises,* 818 F.2d at 272.

The legitimacy of this rationale is not undermined by Dettra's reference to *Perfect Fit Indus. v. Acme Quilting Co.,* 618 F.2d 950, 955 (2d Cir.1980), *cert. denied,* 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 71 (1982), a case in which we declined to apply the presumption to a Lanham Act action for money damages. That case is inapposite for the reason that the decision was based on New York's law of unfair competition.

Once it is shown that a defendant deliberately engaged in a deceptive commercial practice, we agree that a powerful inference may be drawn that the defendant has succeeded in confusing the public. Therefore, upon a proper showing of such deliberate conduct, the burden shifts to the defendant to demonstrate the absence of consumer confusion.

█ Nonetheless, Resource cannot avail itself of this burden-shifting doctrine because it has failed to establish intent to deceive. Resource must demonstrate that Dettra set out to intentionally deceive flag purchasers by representing that it was affiliated with the Foundation. Resource, however, failed to produce evidence of Dettra's intent to deceive its customers. The evidence reveals that Dettra believed that it would manufacture the flags for Resource. The October 9 Dettragram was mailed in anticipation of a contractual relationship with Resource. At that time, Dettra was waiting for authorization from Resource to commence production of the com-

memorative flags. Because no authorization had been received, Dettra wrote on October 19 to Resource to inform Resource that Dettra was ready to begin production. It was not until November that Dettra learned that it was not to be the manufacturer of Resource's flags.

The February 1985 letter, although mailed after Dettra learned that Resource had selected another manufacturer, contained no language suggesting that Dettra was affiliated with the Foundation; this letter and attached price list simply noted that Dettra would contribute a portion of net profits from the sale of its liberty flags to the Foundation. Even before receiving a letter from the Foundation demanding that it cease its unauthorized campaign, Dettra, in a March 1, 1985 amended price list, disclaimed any endorsement of its flags by the Foundation. Finally, Dettra complied fully with the Foundation's request that it cease its solicitation.

■ Resource also argues that the similarities in flags are probative of Dettra's intent to deceive. However, it was Dettra that suggested using the tri-color background in the initial meeting between the parties. Moreover, Dettra's logo was not at all like the highly stylized official logo. Resource, as the authorized licensee, was entitled to use the official logo, the official copyright symbol and the terms "1886 Centennial 1986." None of those items appeared on Dettra's flag. Resource has failed to introduce probative evidence of deliberate deception raising triable issues for a jury's consideration. *Twin Laboratories*, 900 F.2d at 568.

■ Resource contends that it presented sufficient circumstantial evidence of Dettra's deliberate deception. It asserts that "[t]he deception includes a long pattern of conduct [including the similarities in flags] to establish in the eyes of the wholesale market for ceremonial flags, the notion that Dettra was officially connected with the . . . Restoration and celebration." This creative attempt to link events and acts in order to ascribe to Dettra a bad motive rests only upon speculation and conjecture. We have not hesitated to affirm a summary judgment when the only proof proffered in opposition amounts to nothing more than speculation and conjecture. *Francis v. Coughlin*, 891 F.2d 43, 47 (2d Cir.1989); *Quarles v. General Motors Corp.*, 758 F.2d 839, 840 (2d Cir.1985). The fact that the defendant's state of mind is in issue does not alter the result where only speculative allegations are offered to demonstrate the existence of state of mind after ample opportunity to engage in relevant discovery. *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir.1983). While we are well aware that caution must be exercised in granting summary judgment when state of mind is in issue, "[t]he summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985).

■ Nor do we think that summary judgment was inappropriate with respect to Resource's claim of product infringement. "[S]ummary judgment is appropriate if the court is satisfied that the products or marks are so dissimilar that no question of fact is presented." *Universal City Studios v. Nintendo Co.*, 746 F.2d 112, 116 (2d Cir.1984). In assessing whether Dettra's flag is confusingly similar to Resource's flag, we may visually compare the flags. *Id.* at 116.

The only similarities between the two are the tri-color background and the location of the logo in relation to the background. As previously noted, Dettra suggested the tri-color background. Also, as mentioned above, the logos bear no resemblance to each other except to the extent that both depict the Statue of Liberty in some form. Dettra's logo is a true representation of the Statue, whereas the official logo is a highly stylized version. Dettra's flag did not bear the official copyright symbol or the terms "1886 Centennial 1986." Because we agree with the district court that the flags are so materially different that no question of fact was presented on the issue of likelihood of their confusion, we affirm the sum-

mary judgment as to the product infringement issue. *Id.* at 117–118.

 Finally, summary judgment was properly granted with respect to Resource's state law claim of inducing breach of the licensing agreement between it and the Foundation. To succeed on this claim, Resource must establish a valid licensing agreement; Dettra's knowledge of the agreement and inducement of a breach; and damages resulting from the breach. *Universal City Studios, Inc. v. Nintendo Co.*, 797 F.2d 70, 75 (2d Cir.), *cert. denied*, 479 U.S. 987, 107 S.Ct. 578, 93 L.Ed.2d 581 (1986); *Strobl v. New York Mercantile Exch.*, 561 F.Supp. 379, 386 (S.D.N.Y.1983); *Israel v. Wood Dolson Co.*, 1 N.Y.2d 116, 120, 134 N.E.2d 97, 99, 151 N.Y.S.2d 1, 5 (1956). Even assuming that the Foundation breached its agreement, Resource has failed to establish an inducement to breach on the part of Dettra. Dettra's only communications with the Foundation were letters relating to the Statue of Liberty restoration campaign, which the Foundation demanded be terminated. Additionally, Dettra mailed a check in the amount of $750 to the Foundation. The Foundation was unaware that Dettra's check had been accepted, because it was processed, like all other contributions, by an organization other than the Foundation. Based on Resource's utter failure to present evidence of inducement to breach, we affirm the district court's decision.

We have considered Resource's remaining contentions and find them to be without merit.

### CONCLUSION

In view of the foregoing, we conclude that the district court properly granted summary judgment in favor of Dettra as to all claims pleaded against Dettra. We therefore affirm the judgment.