**CHAMPAGNE, a partnership, Plaintiff–Appellant,**

v.

**Frank DIBLASI, Jodi Giambrone, James Santopolo, Harold Miller, and Marvin Welkowitz, Defendants–Appellees.**

**Docket No. 01–7530.**

United States Court of Appeals, Second Circuit.

June 4, 2002.

**16**

Victor M. Serby, N.Y., NY, for Appellant.

John V. Decolator, North Merrick, NY, for Appellees.

Present NEWMAN and KEARSE, Circuit Judges, RAKOFF, District Judge *
.

*SUMMARY ORDER*

This cause came on to be heard on the record from the United States District Court for the Eastern District of New York, and was argued by counsel.

ON CONSIDERATION WHEREOF, it is now hereby ordered, adjudged, and decreed that the judgment of said District Court be and it hereby is affirmed.

Plaintiff Champagne appeals from a judgment of the United States District Court for the Eastern District of New York, Leonard D. Wexler, *Judge*, dismissing on the merits its claims for trade dress infringement and dilution in violation of § 43 of the Lanham Act, 15 U.S.C. § 1125, and declining to exercise supplemental jurisdiction over plaintiff's state-law claims, following the entry, on consent, of a permanent injunction against the use by defendants of the name "Champagne." The district court, noting that in consenting to the injunction, defendants admitted no liability on any of plaintiff's claims and did not agree to make any monetary payment, granted summary judgment dismissing plaintiff's federal claims on the ground that plaintiff had not shown any federally protectible right to the name "Champagne." On appeal, plaintiff makes various challenges to the court's ruling. This Court is "free to affirm an appealed decision on any ground which finds support in the record, regardless of the ground upon which the trial court relied." *Leecan v. Lopes*, 893 F.2d 1434, 1439 (2d Cir.), *cert. denied*, 496 U.S. 929, 110 S.Ct. 2627, 110 L.Ed.2d 647 (1990); *see, e.g., Headley v. Tilghman*, 53 F.3d 472, 476 (2d Cir.), *cert. denied*, 516 U.S. 877, 116 S.Ct. 207, 133 L.Ed.2d 140 (1995). We affirm for the reasons that follow.

Following the entry, on consent, of the permanent injunction against use by defendants of the name "Champagne," plaintiff pursued its remaining federal claims for damages and attorney's fees under § 35 of the Lanham Act, 15 U.S.C. § 1117. The claims for damages were properly dismissed because

> it is well settled that in order for a Lanham Act plaintiff to receive an award of damages the plaintiff must prove either " 'actual consumer confusion or deception resulting from the violation,' " *Getty Petroleum Corp. v. Island Transportation Corp.*, 878 F.2d 650, 655 (2d Cir.1989) (quoting *PPX Enterprises, Inc. v. Audiofidelity Enterprises, Inc.*, 818 F.2d 266, 271 (2d Cir. 1987)), or that the defendant's actions were intentionally deceptive thus giving rise to a rebuttable presumption of consumer confusion. *See Resource Developers, Inc. v. Statue of Liberty–Ellis Island Foundation, Inc.*, 926 F.2d 134, 140 (2d Cir.1991); *PPX Enterprises*, 818 F.2d at 273.

*George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1537 (2d Cir.) (emphasis omitted) (upholding judgment in favor of defendant on Lanham Act damages claims as a matter of law where plaintiff had "failed to present any evidence regarding consumer confusion or intentional deception"), *cert. denied*, 506 U.S. 991, 113 S.Ct. 510, 121 L.Ed.2d 445 (1992); *see also Resource Developers, Inc. v. Statue of Liberty–Ellis Island Foundation, Inc.*, 926 F.2d 134, 139 (2d Cir.1991) ("When a plaintiff seeks money damages in either a product infringement case or a false advertising case asserted under section 43(a), the plaintiff must introduce evidence of actual consumer confusion.").

Although the district court noted that the parties' submissions raised a number of disputed factual issues, it did not identify any such dispute with respect to the question of actual confusion. Where the undisputed facts reveal that there is an absence of sufficient proof as to one essential element of the claim, any factual disputes with respect to other elements of the claim become immaterial and cannot defeat a motion for summary judgment. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Burke v. Jacoby*, 981 F.2d 1372, 1379 (2d Cir.1992), *cert. denied*, 508 U.S. 909, 113 S.Ct. 2338, 124 L.Ed.2d 249 (1993).

In the present case, plaintiff did not produce evidence of actual confusion. For example, when asked in deposition about any actual confusion among persons who booked defendants' group, one Champagne partner testified that he was "not aware of anything specific" (Deposition of John Wagner at 20), and Champagne's leader attributed the recent decline in Champagne's number of bookings to the existence of the present litigation (*see, e.g.,* Deposition of Charles Arcuri at 22 ("It's out there that there's a lawsuit going on between Champagne and us [*sic*] and because of that people don't seem to want to connect with Champagne.")).

Plaintiff pointed to three instances in which it apparently contended that defendants Frank DiBlasi *et al.* performed under the name "Champagne" after leaving the group in May and June 1999, to wit, a performance at the Bay Shore, New York Library on August 5, 1999 ("Library"); a performance at Trudy B's, a restaurant in Freeport, New York, on August 7, 1999; and perhaps a performance at a dance sponsored by The Story Untold Music Alliance on September 25, 1999 ("Music Alliance"). But the record shows that there was no possibility of actual confusion with respect to the booking of these performances. According to plaintiff's Novem-

ber 27, 2000 statement of material facts as to which it contended there was no genuine issue to be tried ("Plaintiff's Statement"), prior to May 1999, DiBlasi was Champagne's booking agent (Plaintiff's Statement ¶ 13); the engagement at Trudy B's was booked for Champagne in March 1999 (*see id.* ¶¶ 21–22), *i.e.*, "months before [defendants'] departures from plaintiff CHAMPAGNE" (*id.* ¶ 23); the Library and Music Alliance engagements were booked for Champagne in April 1999 (Plaintiff's Statement ¶¶ 26, 27). These bookings, made in the name of Champagne when defendants were members of Champagne, cannot be the basis for any finding of confusion on the part of the booking establishments at the time the agreements were entered into. The lack of any possible confusion at the time of contracting is not negated by the fact that Trudy B's may have subsequently represented to the public, after defendants had left the group and were about to give the August 7 performance, that Champagne would be performing. Further, although plaintiff submitted two affidavits from members of the audience at the August 7 performance at Trudy B's, those affidavits did not show that the public itself believed defendants' group was Champagne. Valerie Acardi, "submit[ting her] declaration in support of plaintiff CHAMPAGNE's motion for summary judgment" (Plaintiff's Statement Exhibit 1, Affidavit of Valerie Acardi dated November 26, 2000, ¶ 5), stated that when defendants' band "began to play I realized it was not CHAMPAGNE" (*id.* ¶ 11). (*See also* Plaintiff's Statement Exhibit 2, Affidavit of Barbara Damon dated November 26, 2000, ¶ 10 ("When the group announced as CHAMPAGNE began to play we realized it was not the CHAMPAGNE we expected to see."); *id.* ¶ 14 ("We received refunds of our admission fee and we left.").) Nor does the fact that Acardi and Damon bought tickets for what they thought would be a performance by Champagne and arrived to find defendants' group instead indicate that the defendants caused confusion. The tickets were purchased from a booking establishment that had properly contracted with Champagne. The defendants were not shown to have done anything to cause confusion resulting in ticket purchases by these customers.

Moreover, plaintiff's submissions indicate that DiBlasi, after forming his new group, informed potential purchasers of defendants' services that defendants were no longer affiliated with the group that had previously performed as Champagne. (*See, e.g.*, Plaintiff's Statement ¶ 56 (DiBlasi " 'informed' booking agents and event sponsors of the alleged breakup of plaintiff CHAMPAGNE").) For example, plaintiff submitted an October 24, 1999 letter from Music Alliance "To Whom It May Concern," stating that Music Alliance had sought to engage Champagne to perform at its September 25 event, but that

> Di Blasi . . . informed us that there had been some changes in the structure of the group and some members of Champagne, who had performed at the previous dance, were no longer part of *his (Frank's) group. He also mentioned that they were looking for a new name.* Since the group Champagne with which we were familiar was intact, with the exception of one member, we were more than happy to hire Frank's group for our dance. *There was absolutely no confusion about which performers would be singing at our dance.*

(Plaintiff's Statement Exhibit 10 (emphases added); *see also* Plaintiff's Statement ¶ 65 (defendants "resubmitt[ed]" promotional materials "to the . . . Library with the text intact, having . . . *replaced plaintiff CHAMPAGNE's name with that of their newly formed group* " (emphasis added)).) There is no indication that the

names chosen for defendants' new group were confusingly similar to "Champagne": They first adopted the name "Cause 4 Concern" and later called themselves "Cover II Cover."

Plaintiff characterizes DiBlasi's notifications to the establishments of defendants' departure from Champagne and their group's new names as attempts to "induc[e] the establishments to breach their existing contracts with plaintiff." (Plaintiff's Statement ¶ 67.) While this assertion reflects one element of a state-law claim for tortious interference with contract, it negates the suggestion that there was actual confusion on the part of establishments booking defendants' services or that defendants attempted to misrepresent themselves as Champagne. We see no error in the summary rejection of plaintiff's claims for damages.

Plaintiff's contention that the district court should have granted summary judgment instead to plaintiff on the ground that defendants failed to respond to plaintiff's statement of the material facts it contended were not in issue is mistaken. Summary judgment may not be granted on the basis of undisputed facts unless the moving papers show also "that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Here, as just discussed, plaintiff's own submissions showed that defendants were entitled to judgment as a matter of law for want of evidence sufficient to permit a rational factfinder to infer that defendants, after withdrawing from the group, either created actual confusion of their new group with Champagne or attempted to perform under that name.

■ Nor do we see any error in the denial of plaintiff's request for attorney's fees. Fees may be awarded under the Lanham Act in exceptional cases, such as where a party has willfully misappropriated a mark or has defended an action in bad faith. *See, e.g., Twin Peaks Productions, Inc. v. Publications International, Ltd.,* 996 F.2d 1366, 1383 (2d Cir.1993); *Universal City Studios, Inc. v. Nintendo Co.,* 797 F.2d 70, 77 (2d Cir.), *cert. denied,* 479 U.S. 987, 107 S.Ct. 578, 93 L.Ed.2d 581 (1986). A refusal to award fees is reviewed for abuse of discretion. *See, e.g., American Honda Motor Co. v. Two Wheel Corp.,* 918 F.2d 1060, 1064 (2d Cir.1990). There was no indication of willful misappropriation or bad faith here. Shortly after this suit was commenced, defendants, without conceding any liability, agreed to the entry of a permanent injunction prohibiting them from using the name "Champagne" for their group. And, as indicated above, plaintiff failed to establish an essential element of its claim for damages. The denial of attorney's fees to plaintiff was appropriate.

Finally, we reject plaintiff's apparent request for reinstatement of its state-law claims. The federal claims having been properly dismissed, the district court properly declined to exercise supplemental jurisdiction over the state-law claims. *See, e.g., Grace v. Rosenstock,* 228 F.3d 40, 55 (2d Cir.2000), *cert. denied,* 532 U.S. 923, 121 S.Ct. 1362, 149 L.Ed.2d 290 (2001); *Fay v. South Colonie Central School District,* 802 F.2d 21, 34 (2d Cir.1986).

We have considered all of plaintiff's contentions on this appeal and have found in them no basis for reversal. The judgment of the district court is affirmed.