**MID–STATE AFTERMARKET BODY PARTS, INC., Plaintiff/Counter–Defendant.**

v.

**MQVP, INC., f/k/a Global Validators, Inc., Defendant/Counter–Plaintiff.**

No. 4:03CV00733JLH.

United States District Court, E.D. Arkansas, Western Division.

May 13, 2005.

Andrew Verne Francis, Little Rock, AR, Mark Mitchell Grossman, Chicago, IL, for Plaintiff.

John R. Elrod, Todd Patrick Lewis, Fayetteville, AR, Lawrence R. Jordan, Joseph H. Heckendorn, Michael J. Sullivan, Brian M. Ziff, Moheeb H. Murray, Detroit, MI, for Counter–Plaintiff.

### OPINION AND ORDER

HOLMES, District Judge.

MQVP has filed a motion (Docket # 100) asking the Court to reconsider the Memorandum Opinion of March 16, 2005, granting summary judgment to Mid–State and denying summary judgment to MQVP.[1]

 MQVP argues that the Court erred in saying that, if MQVP® is a service mark and not a certification mark, the phrase "MQVP parts" is nonsense and means nothing. MQVP argues that a service mark can, in some instances, refer to goods. MQVP cites *Frehling Enterprises v. International Select Group, Inc.*, 192 F.3d 1330 (11th Cir.1999), and it identifies several service marks from the restaurant

service business, as well as a few from the retail service business, in which service marks also refer to goods. Neither *Frehling* nor any of the restaurant or retail service marks can help MQVP in this case. It is true, as the Eleventh Circuit stated in *Frehling,* that the same mark can sometimes identify both a service and goods that are intimately bound up with that service, as happens in the restaurant service business and in the retail service business. *See id.* at 1134 n. 1. Thus, the same mark can be registered as both a trademark and a service mark if the specimens submitted in support of the applications show that the mark is used both to identify goods and to identify services. *In re Restonic Corp.,* 1975 WL 20927, 189 U.S.P.Q. 248, 249 (Trademark Tr. & App. Bd.1975). Still, the distinction between a service mark and a trademark is maintained. *In re Brown & Portillo, Inc.,* 1987 WL 123868, 5 U.S.P.Q.2d 1381, 1383 (Trademark Tr. & App. Bd.1987); *In re McDonald's Corp.,* 1986 WL 83585, 230 U.S.P.Q. 210, 212 (Trademark Tr. & App. Bd.1986).

None of that helps MQVP in this case. MQVP does not manufacture or sell any goods. Unlike the retailer in *Frehling* or the restaurant service providers that MQVP mentions, MQVP does not have a service mark that may also be used, in practice, as a trademark; instead, MQVP has a service mark that it seeks to enforce as though it were a certification mark. "A certification mark is a special creature created for a purpose uniquely different from that of an ordinary trademark or service mark." 3 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 19.91 (4th Ed.2004). Certification marks are subject to grounds for cancellation that are distinct from the grounds for trademarks and service marks. *See* 15 U.S.C. § 1064(5). Moreover:

1. That opinion is reported at 2005 WL 639695.

By their very nature, trademarks and certification marks are mutually exclusive. The Lanham Act provides for cancellation if the registrant engages in the production or marketing of any goods or services to which the certification mark is applied. If a designation is in fact used as a guarantee or certification symbol, it cannot be registered as a trademark.·

McCARTHY, § 19.94 (footnote omitted). "[T]he owner of a certification mark cannot use the identical mark as a service mark or trademark on or in connection with those goods or services that it certifies. A certification mark should be used *only* to certify." *Id.* (emphasis in the original).

■ The root problem is that MQVP® is registered as a service mark, but in this case MQVP seeks to enforce that mark as though it were a certification mark. *Cf. Worthington Foods, Inc. v. Kellogg Co.,* 732 F.Supp. 1417, 1429 (S.D.Ohio 1990). While it makes sense for a restaurant, such as McDonald's, to have a service mark that can also refer to hamburgers, it does not make sense for MQVP to have a service mark that is used to refer to goods manufactured and sold by third parties. MQVP does not manufacture or sell goods. Its mark is used in connection with goods manufactured and sold by others. It certifies that those goods have certain qualities or characteristics (*e.g.,* traceability). Hence, the phrase "MQVP parts" can make sense if MQVP® is a certification mark. Indeed, the phrase "MQVP parts" can make sense only if MQVP® is a certification mark. However, MQVP emphatically denies that the mark is a certification mark. Thus, the Court concludes that the term "MQVP parts" makes no sense.

MQVP also argues that the Court erred in looking to MQVP's customers and potential customers—manufacturers, distributors, and insurance companies—to determine the likelihood of confusion. MQVP, understandably, wants the Court to look at collision repair shops. MQVP cites *United Industries Corp. v. Clorox Co.,* 140 F.3d 1175, 1180 (8th Cir.1998), and *Resource Developers, Inc. v. Statue of Liberty–Ellis Island Foundation, Inc.,* 926 F.2d 134, 139 (2d Cir.1991), for the proposition that the issue under the Lanham Act is whether the statement deceived or had the tendency to deceive a substantial segment of the audience toward which the statement was directed. The audience toward which Mid–State's statements were directed consists of collision repair shops. While it may well be the law applicable in the typical Lanham Act case that likelihood of confusion is determined by looking to the audience toward which the statements were directed, to accept that argument here would permit MQVP to do what the Lanham Act specifically says it cannot do, *i.e.,* use a service mark as a certification mark. In the peculiar facts of this case, in which MQVP earnestly contends that its mark is a service mark, not a certification mark, the likelihood of confusion should be determined by looking toward customers and potential customers of MQVP's services.

The only sense that any collision repair shop could make of the phrase "MQVP parts" is to take it as a term that it is used by a person other than its owner to certify quality or characteristics of the parts. In other words, the only sense that a collision repair shop could make of the phrase "MQVP parts" is to take it as a certification mark. Yet, MQVP denies that MQVP® is a certification mark. If it is not a certification mark, then the phrase "MQVP parts" is nonsense to a collision repair shop. If the Court were to look to collision repair shops, who are not customers of MQVP but are customers of distributors who participate in the MQVP program, the effect would be to permit MQVP to enforce a service mark as a certification

mark. This Court is not going down that road.

One of the dual purposes of the Lanham Act is to protect consumers of goods and services from deception. 1 McCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 2.33. Hence, in determining the likelihood of confusion, in most cases it is in keeping with that purpose to look to recipients of the message in question to ascertain the likelihood of confusion. However, in this case there is a countervailing consideration. The distinct restrictions on certification marks stated in 15 U.S.C. § 1064(5) are also there to protect customers. If a person could register a service mark but enforce it as a certification mark, that person could avoid the protections stated in 15 U.S.C. § 1064(5). So that the protections afforded the public in 15 U.S.C. § 1064(5) are not evaded, it is necessary in this case to adhere closely to the notion that the mark in question is a service mark, not a certification mark, which means looking to customers and potential customers of MQVP to determine likelihood of confusion.

If MQVP wishes to enforce its mark as a certification mark, it may do so. It need only register the mark as a certification mark and subject itself to 15 U.S.C. § 1064(5). Were MQVP to do so, it would be obligatory for the Court to look to collision repair shops to determine the likelihood of confusion should a distributor, such as Mid–State, who is not a participant in the program advertise that it has "MQVP parts available." However, so long as Mid–State insists that the mark is only a service mark, not a certification mark, the Court will treat the mark as only a service mark, not a certification mark; and the Court will not open the door to evasion of 15 U.S.C. § 1064(5).

MQVP also argues that the Court found as a factual matter that its customers are manufacturers, distributors, and insurers, but not collision repair shops. MQVP contends that there is a genuine issue of material fact as to whether collision repair shops are among its customers. Before filing this motion for reconsideration, MQVP had never contended that collision repair shops are among its customers. MQVP's Amended Counterclaim alleges, in paragraph 7, "Through the MQVP® program, MQVP® Inc. serves the needs of insurance companies, automotive parts distributors, import warehouses, and manufacturers as authorized participants in the program." Paragraph 8 of the Amended Counterclaim alleges, "The MQVP® was created to evaluate manufacturing companies and distributors that supply the collision repair industry." Paragraph 10 of the Amended Counterclaim explains what manufacturers must do to participate in the MQVP® program. Paragraph 11 of the Amended Counterclaim describes what distributors must do to participate in the MQVP® program. The Amended Complaint never alleges that collision repair shops are participants in the program or customers of MQVP.

In paragraph 15 of MQVP, Inc.'s Response to Mid–State's Local Rule 56.1 Statement of Material Facts as to Which There is No Genuine Issue, MQVP stated, "MQVP (f/k/a Global) does not simply maintain a registry of manufacturers who have obtained ISO 9000, QS 9000 or TS 16949. MQVP maintains a registry of manufacturers as well as *distributors* who have obtained ISO 9000, QS 9000 or TS 16949 registration, and who have met all other requirements to be approved for the MQVP Program as well." In response to paragraph 19, MQVP stated, "Manufacturers as well as distributors pay fees to MQVP on a monthly basis." In response to paragraph 21, MQVP stated, "Manufacturers and distributors can apply to for [sic] qualification or a due diligence review conducted by MQVP to become a partici-

pant in the MQVP® Program." In response to paragraph 41, MQVP admitted that Mid–State and MQVP are not competitors.

MQVP also described the program in Defendant/Counter–Plaintiff MQVP, Inc., f/k/a Global Validators Inc.'s, Statement of Undisputed Fact on MQVP's Motion for Summary Judgment of Plaintiff/Counter Defendant Mid–State Aftermarket Body Parts, Inc.'s Complaint. In paragraph 15, that document describes the requirements for a manufacturer to participate in the MQVP Program, and in paragraph 16 it describes the requirements for a distributor to participate in the MQVP Program. It also says in paragraph 14 that all members pay a participant fee. Nothing in the record shows that any collision repair shop has ever paid any fee to MQVP. That document never describes collision repair shops as participants in the program.

MQVP's most recent manuals describing its program are attached as Exhibits 63, 64, and 65 to Mid–State's Reply Memorandum to Global's Brief in Response to Mid–State's Motion for Summary Judgment. In those manuals, MQVP explains that the Manufacturers' Qualification and Validation Program establishes customer-specific requirements for non-OEM part manufacturers and distributors.[2] All three manuals state that MQVP® defines quality expectations for manufacturers and distributors of non-OEM replacement parts. All three manuals define performance expectations for manufacturers and distributors who are participants; and they explain MQVP's customer-specific requirements for manufacturers and distributors. Those manuals contain no corresponding provisions for collision repair shops. Nothing in those manuals states, or even suggests, that collision repair

shops are participants in the program or customers of MQVP.

MQVP points to a brochure that was prepared in 2001 and submitted as a specimen in support of its service mark application. That document describes "specific benefits for participants" and includes a description of benefits to collision repair centers. However, on the page entitled "MQVP: How to Participate," the document states that manufacturing companies wishing to participate in MQVP must first achieve QS–9000 registration, and it states that distributors must meet an ISO 9000 registration planned deadline. In response to the question, "when can my company apply?" the document states that manufacturers may apply to MQVP upon receiving QS–9000 registration, and distributors can apply upon acceptance of their "implementation project plan" during the ISO development process. No explanation appears in that document or in any other document submitted to the Court stating how a collision repair shop could apply to participate in the program.

MQVP also has attached to its motion for reconsideration a page from its website explaining how repair facility operators can obtain an MQVP certificate for MQVP parts. That document, however, does not state that collision repair shops are customers of MQVP. The MQVP website identifies the participants in the program as insurers, manufacturers, and distributors,[3] which is consistent with all of the documents that were submitted to the Court by both parties at the summary judgment stage of this case and all of the pleadings and briefs submitted by the parties. There is no genuine issue of material fact on the question of who are the participants in the MQVP program. The participants are manufacturers, distributors, and

**2.** The last two revisions add "Vehicle Test Fit (VTF) Centers."

**3.** *See* http://www.mqvp. com/affil.asp.

insurers. There is no genuine issue of material fact as to whether collision repair shops are customers of MQVP: they are not.

The motion for reconsideration is DE-NIED.