**LIFE INDUSTRIES CORPORATION,**
**Plaintiff,**

v.

**OCEAN BIO–CHEM, INC. and Star Brite Distributing, Inc., Defendants.**

**No. CV 91–1659.**

United States District Court,
E.D. New York.

July 28, 1993.

Bauer & Schaffer by Murray Schaffer, Mineola, NY, for plaintiff.

Moritt, Hock & Hamroff by Robert S. Cohen, Hempstead, NY and Berger & Shapiro, P.A., Fort Lauderdale, FL, for defendants.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

WEXLER, District Judge.

#### INTRODUCTION

Life Industries Corporation ("Life" or "plaintiff") brings this action for trade dress infringement against Star Brite Distributing, Inc. ("Star Brite" or "defendant") pursuant to the Lanham Trade–Mark Act of 1946, 15 U.S.C. § 1051, et seq., commonly known as the Lanham Act and New York's anti-dilution statute, General Business Law § 368–d. Specifically, the action arises under § 43(a) of the Act, 15 U.S.C. § 1125(a), and seeks relief under that section and §§. 34 and 35 of the Act, 15 U.S.C. §§ 1116, 1117.

This Court has jurisdiction over the parties and subject matter pursuant to § 39 of the Act, 15 U.S.C. § 1121, and pursuant to 28 U.S.C. §§ 1338(a) and (b) and 1391(b) and (c).

*FINDINGS OF FACT*

1. Life is a New York corporation with its principal place of business at 205 Sweet Hollow Road, Bethpage, New York.

2. Life is a leading manufacturer of marine care products. Since its inception in 1943, it packaged those products in a distinctive trade dress consisting of a yellow background, black borders, black lettering and occasional red and white highlights.

3. In 1965, Life introduced a polysulfide sealant trademarked "Boatlife Life Calk," which is supplied in small squeeze tubes and larger cartridges. Life is now the leading supplier of polysulfide.

4. Star Brite is a Florida corporation with its principal place of business in Fort Lauderdale, Florida. It manufactures and sells marine care products throughout the United States and is engaged in business in the State of New York and, specifically, within this district.

5. Life's choice of color, shading and print placement are nonfunctional and nondescriptive features effecting an arbitrary and inherently distinctive trade dress which serves as source identification.

6. Star Brite has never adopted a consistent overall packaging design or trade dress for its marine care products. Moreover, there is some evidence that on various occasions, it has imitated the coloration, trade dress and/or trademarks of other competitors.

7. In 1986, Star Brite first introduced a polysulfide sealant named "Deck Caulk" which was packaged in a white container with black lettering on a yellow blister card. In 1989, Star Brite reintroduced this product under a new name, "Boat Caulk," in a small size squeeze tube on a yellow and black blister card and in a large size cartridge with a yellow background having black borders and black lettering as well as red and white highlights.

8. The packaging of Star Brite's "Boat Caulk" is strikingly similar to that of plaintiff's use of colors, color combinations, shadings and layout on Life products. Moreover, the name "Boat Caulk" is strikingly similar to that of Life's trademark, "Boatlife Life Calk."

9. The parties' products are inexpensive, routinely purchased chemical formulations for use in effecting minor boat repairs, or for sealing entire deck surfaces. Little care is utilized by customers when purchasing these products.

10. The channels of trade for Life's and Star Brite's products are identical. The products are found in the same retail outlets and on the same racks and shelves; they compete for the same customers.

11. The colors and layout used by Star Brite were chosen by its President. He was aware of Life's products, its trade dress and its leading polysulfide market position before Star Brite adopted the coloration and trade dress of "Boat Caulk." Star Brite consciously and deliberately imitated Life's trade dress for the purpose of trading on the goodwill established by Life.

12. Sometime after the commencement of this lawsuit and before the trial began, plaintiff, on its own, discontinued the trade dress of "Boatlife Life Calk" and began merchandising its marine care products with a completely new and different trade dress.

13. Plaintiff failed to offer any proof of damages, loss of sales or profits arising from the copying of plaintiff's trade dress by the defendant.

*CONCLUSIONS OF LAW*

1. A product's trade dress is its total image, including features such as size, shape, color or color combinations, texture, and/or graphics. *Two Pesos, Inc. v. Taco Cabana, Inc.*, —— U.S. ——, —— n. 1, 112 S.Ct. 2753, 2755 n. 1, 120 L.Ed.2d 615 (1992); *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 168 (2d Cir.1991); *Le Sportsac, Inc. v. K Mart Corp.*, 754 F.2d 71, 75 (2d Cir.1985); *Merriam–Webster Inc. v. Random House Inc.*, 815 F.Supp. 691, 697 (S.D.N.Y. 1993). Individually, each of these elements are not inherently distinctive. Thus, the courts have focused on the combination of these elements and the total impression they make. *The Paddington Corp. v. Attiki Importers & Distrib., Inc.*, 996 F.2d 577, 583–84

(2d Cir.1993); *Roulo v. Russ Berrie & Co.,* 886 F.2d 931, 936 (7th Cir.1989), *cert. denied,* 493 U.S. 1075, 110 S.Ct. 1124, 107 L.Ed.2d 1030 (1990).

■ 2. The statutory purpose of § 43(a) of the Lanham Act is to prevent deception and unfair competition. *Two Pesos,* — U.S. at —, 112 S.Ct. at 2760. There is no textual basis in § 43(a) for treating inherently distinctive trademarks differently from inherently distinctive trade dresses. *Id.* Thus, trademarks and trade dresses are afforded the same protection and infringements of both are subject to the same two-prong analysis. In order to prevail under § 43(a), a plaintiff must prove (1) that its mark is inherently distinctive and (2) that a likelihood of confusion exists between its products and the defendant's. *Id.; Paddington,* 996 F.2d at 581–82; *Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.,* 973 F.2d 1033, 1038–39 (2d Cir.1992).

■ 3. In light of the Supreme Court ruling in *Two Pesos,* Life need not establish any secondary meaning regarding its trade dress.

The secondary meaning of a trade dress has come to represent the identity of a specific producer. *Paddington,* 996 F.2d at 581–82. In *Two Pesos,* the Supreme Court specifically rejected the Second Circuit's secondary meaning requirement. *Two Pesos,* — U.S. at —, 112 S.Ct. at 2760; *Paddington,* 996 F.2d at 581–82. The Court held that there is no textual basis in § 43(a) supporting the concept of secondary meaning and such a requirement would undermine the Lanham Act's purpose to foster competition and maintain quality by securing to the producer the benefits of good reputation. *Two Pesos,* — U.S. at —, 112 S.Ct. at 2760.

■ 4. Life has proven that its "Boatlife Life Calk" trade dress is inherently distinctive. The "inherently distinctive" standard is less stringent than the "secondary meaning" standard. *Paddington,* 996 F.2d at 582–84 (citing *Chevron Chemical Co. v. Voluntary Purchasing Groups, Inc.,* 659 F.2d 695 (5th Cir.1981), *cert. denied,* 457 U.S. 1126, 102 S.Ct. 2947, 73 L.Ed.2d 1342 (1982)). The focus of the "inherently distinctive" inquiry is not whether a trade dress has come to identify a specific producer, but rather whether the dress is "capable of identifying a particular source of the product." *Two Pesos,* — U.S. at —, 112 S.Ct. at 2760; *Paddington,* 996 F.2d at 581–82.

■ Since the choices that a producer has for packaging its products are almost unlimited, typically a trade dress will be arbitrary or fanciful. *Paddington,* 996 F.2d at 582–84. Such marks are, by definition, inherently distinctive, and therefore always satisfy the first prong under the Lanham Act § 43(a). *Two Pesos,* — U.S. at —, 112 S.Ct. at 2757; *Paddington,* 996 F.2d at 582–83.

Life's trade dress is unique and capable of creating a commercial impression distinct from the accompanying words. The choice and arrangement of colors and graphics creates a fanciful or arbitrary dress which is inherently distinctive, and which satisfies the first prong under § 43(a).

■ 5. The factors a court must consider when determining whether there is a "likelihood of confusion" between products are delineated in *Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 492 (2d Cir.1961), *cert. denied,* 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 as follows:

[1] the strength of the [plaintiff's] mark, [2] the degree of similarity between the two marks, [3] the proximity of the products, [4] the likelihood that the prior owner will bridge the gap, [5] actual confusion, and [6] the reciprocal of defendant's good faith in adopting its own mark, [7] the quality of the defendant's product, and [8] the sophistication of the buyers.

*Id.* at 495.

The *Polaroid* eight-factor list is not exclusive. *Bristol–Myers Squibb,* 973 F.2d at 1043; *Paddington,* 996 F.2d at 584–85. Furthermore, the evaluation of the Polaroid factors is not a mechanical process "where the party with the greatest number of factors weighing in its favor wins." *Physicians Formula Cosmetics Inc. v. West Cabot Cosmetics, Inc.,* 857 F.2d 80, 85 (2d Cir.1988). Rather, the court should focus on whether these factors, taken together, create a likeli-

hood of confusion. *Paddington*, 996 F.2d at 584–85; *Lang v. Retirement Living Pub. Co.*, 949 F.2d 576, 580 (2d Cir.1991).

■ The following *Polaroid* factors are applicable to this case:

(a) Life's "Boatlife Life Calk" exhibits a strong trade dress.[1]

(b) There are significant similarities in the overall appearance of Life's "Boatlife Life Calk" and Star Brite's "Boat Caulk." Both products consist of a yellow background having black borders and lettering as well as red and white highlights.

(c) Defendant's President was aware of plaintiff's trade dress and leading market position before Star Brite imitated Life's trade dress.

(d) Both Life's "Boatlife Like Calk" and Star Brite's "Boat Caulk" compete in the same market. They are found in the same retail outlets, on the same racks and shelves and they compete for the same customers. The similarities between Life's and Star Brite's products are so striking that it is obvious that Star Brite consciously and deliberately imitated Life's "Boatlife Life Calk" trade dress for the purpose of trading on the goodwill established by Life.

(e) Boatlife Boat Calk and Boat Caulk are relatively inexpensive products, costing no more than a few dollars per tube. Customers are unlikely to exercise great care in selecting a particular product to purchase.

In weighing the applicable *Polaroid* factors, this Court concludes that Star Brite's "Boat Caulk" trade dress creates a strong likelihood of confusion with Life's "Boatlife Life Calk" dress.

6. Pursuant to § 35(a), 15 U.S.C. § 1117(a), after finding a trade dress infringement, this Court, subject to the principles of equity, may award (1) plaintiff's damages, (2) defendant's profits and/or (3) costs of the action. Awards of both plaintiff's damages and defendant's profit may be assessed "according to the circumstances of the case." 15 U.S.C. § 1117(a). "While damages directly measure the plaintiff's loss, de-

fendant's profits measure the defendant's gain." *George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1540 (2d Cir.1992).

■ 7. Before a plaintiff is entitled to actual damages, he must prove either (1) "actual consumer confusion or deception resulting from the violation," *Getty Petroleum Corp. v. Island Transp. Corp.*, 878 F.2d 650, 655 (2d Cir.1989) (quoting *PPX Enterprises, Inc. v. Audiofidelity Enterprises, Inc.* 818 F.2d 266, 271 (2d Cir.1987)), or (2) "that the defendant's actions were intentionally deceptive thus giving rise to a rebuttable presumption of consumer confusion." *George Basch Co.*, 968 F.2d at 1537; *Resource Developers, Inc. v. Statue of Liberty–Ellis Island Foundation, Inc.*, 926 F.2d 134, 140 (2d Cir.1991); *PPX Enterprises*, 818 F.2d at 273. The actual consumer confusion standard is satisfied once a plaintiff has produced evidence of at least one instance of such confusion. *Warner Bros., Inc. v. Gay Toys, Inc.*, 658 F.2d 76, 79 (2d Cir.1981); *Merriam–Webster*, 815 F.Supp. at 698. In the instant case, Life failed to present any evidence regarding actual consumer confusion.

■ 8. Although defendant intended to imitate and benefit from Life's "Boatlife Life Calk" trade dress, this does not amount to a constructive finding that Star Brite engaged in intentionally deceptive conduct. *George Basch Co.*, 968 F.2d at 1541. A plaintiff must prove that an infringer acted with "willful deception" before the infringer's profits may be recoverable by way of an accounting. *Id.* at 1537. The *George Basch* court, distinguishing between a deliberate attempt to imitate and a deliberate attempt to deceive, stated:

Absent confusion, imitation of certain successful features in another's product is not unlawful and to that extent a "free ride" is permitted. *Norwich Pharmacal Co. v. Sterling Drug, Inc.*, 271 F.2d 569, 572 (2d Cir.1959).... [W]hen a likelihood of confusion does arise, that does not inexorably

---

**1.** A dress's "strength" refers to either its distinctiveness or its tendency to identify the goods sold

from a particular source. *Paddington*, 996 F.2d at 584–85.

lead to the conclusion that the defendant acted with deliberate deceit.

*Id.* at 1541.

Although Star Brite imitated certain features of the "Boatlife Life Calk" trade dress to a degree that caused a likelihood of confusion, this Court finds that Star Brite did not act with deliberate willful deception. As Life failed to show either actual consumer confusion or intentional deception, actual damages are not available.

9. Furthermore, even where a plaintiff shows actual consumer confusion or intentional deception, actual damages will only be awarded where he successfully shows (1) causation and (2) the amount of damages suffered from the infringement. *Alpo Petfoods Inc. v. Ralston Purina Co.,* 913 F.2d 958, 969–70 (D.C.Cir.1990); *Burndy Corp. v. Teledyne Indus., Inc.,* 748 F.2d 767, 773 (2d Cir.1984); *Merriam–Webster,* 815 F.Supp. at 700. The evidence supporting plaintiff's contentions must be sound and the amount of damages must not be speculative. *Bigelow v. RKO Radio Pictures, Inc.,* 327 U.S. 251, 265, 66 S.Ct. 574, 580, 90 L.Ed. 652 (1946) ("speculation or guesswork" cannot sustain an award of damages); *Alpo Petfoods Inc.,* 913 F.2d 958, 969–70 (D.C.Cir.1990); *Merriam–Webster,* 815 F.Supp. at 700 (using sales projections as evidence).

Life failed to produce any evidence regarding causation. Similarly, Life failed to provide any evidence as to the amount of damages plaintiff sustained. Accordingly, plaintiff is not entitled to lost profits.

10. The rule in this Circuit has been that an accounting for defendant's profits is normally available only if the defendant is either (1) unjustly enriched, (2) if the plaintiff sustained damages from the infringement, or (3) if the accounting is necessary to deter a willful infringer from doing so again. *George Basch Co.,* 968 F.2d at 1537 (quoting *Burndy Corp.,* 748 F.2d at 772 (2d Cir.1984)); *Cuisinarts, Inc. v. Robot–Coupe Intern. Corp.,* 580 F.Supp. 634, 637 (S.D.N.Y.1984).

(a) Under an unjust enrichment theory, plaintiff must show that, were it not for defendant's infringement, the defendant's sales would otherwise have gone to the plaintiff and that the defendant acted willfully. *George Basch Co.,* 968 F.2d at 1539; *Burndy Corp.,* 748 F.2d at 772. Ordinarily, a plaintiff must produce evidence which indicates that its own sales were diverted as a result of the infringement. *George Basch Co.,* 968 F.2d at 1540–41; *Burndy Corp.,* 748 F.2d at 773.

Plaintiff failed to produce any evidence indicating that its sales were diverted as a result of the infringement or that defendant acted with willful deception. Thus, Life is not entitled to defendant's profits under an unjust enrichment theory. *George Basch Co.,* 968 F.2d at 1539; *Burndy Corp.,* 748 F.2d at 773.

(b) Under the second theory, a plaintiff may be awarded defendant's profits to serve "as a rough proxy measure of plaintiff's damages." *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.,* 316 U.S. 203, 206, 62 S.Ct. 1022, 1024, 86 L.Ed. 1381 (1942); *Hamilton–Brown Shoe Co. v. Wolf Bros. & Co.,* 240 U.S. 251, 261–62, 36 S.Ct. 269, 272–73, 60 L.Ed. 629 (1916); *George Basch Co.,* 968 F.2d at 1539 (quoting *Champion Plug Co. v. Sanders,* 331 U.S. 125, 131, 67 S.Ct. 1136, 1139, 91 L.Ed. 1386 (1947)). However, before an accounting of defendant's profits will be made, plaintiff must establish a "basis for finding damages [,] . . . a general right to damages", and willful deceptive conduct. *George Basch Co.,* 968 F.2d at 1539; *see Champion Plug Co.,* 331 U.S. at 131, 67 S.Ct. at 1139; *Mishawaka Mfg. Co.,* 316 U.S. at 206, 62 S.Ct. at 1024.

Life failed to show any basis for finding damages or to prove willful misconduct on the part of Defendant. Thus, Plaintiff is not entitled to an accounting.

(c) Finally, in all extraordinary cases, the courts may award a defendant's profits if it is necessary to deter a willful infringer from doing so again. *George Basch Co.,* 968 F.2d at 1539; *Burndy Corp.,* 748 F.2d at 772. Based solely upon a finding of defendant's fraudulent actions, "[t]he rationale underlying this theory is not compensatory in nature, but rather serves to both protect the public at large" and award the rightful owner. *George Basch Co.,* 968 F.2d

at 1539; *see W.E. Bassett Co. v. Revlon, Inc.,* 435 F.2d 656, 664 (2d Cir.1970).

This Court concludes that due to Plaintiff's failure to prove its damages and Plaintiff's voluntary abandonment of its trade dress, this is not an extraordinary case where Defendant's profits should be awarded under a deterrence theory.

11. Furthermore, even where a plaintiff is otherwise entitled to an accounting, it is within the court's discretion to assess the relative importance of various factors in determining whether the equities weigh in favor of an accounting. *George Basch Co.,* 968 F.2d at 1540. These factors include:

> (1) the degree of certainty that the defendant benefitted form the unlawful conduct, (2) availability and adequacy of other remedies, (3) the role of a particular defendant in effectuating the infringement, (4) plaintiff's laches; and (5) plaintiff's unclean hands. [And] as the Lanham Act dictates, every award is "subject to equitable principles" and should be determined "according to the circumstances of the case." 15 U.S.C. § 1117.

*Id.* at 1540–41 (citations omitted).

Assuming, *arguendo,* that plaintiff had successfully proven willful deceptiveness, no factor weighs heavily in favor of an accounting on plaintiff's behalf. In fact, while plaintiff became aware of Star Brite's trade dress infringement in 1989, it did not file its complaint until May 1991. (Trial Transcript at 17) Thus, under the doctrine of laches, an accounting of Defendant's profits is not appropriate. Moreover, the complete absence of proof concerning damages indicates that Defendant may have benefitted only minimally from the infringement. Under this Court's discretion, Plaintiff does not merit an award of Defendant's profits.

12. Plaintiff requested that Star Brite be enjoined from manufacturing, promoting, or distributing "Boat Caulk" or any other products which possess trade dresses similar to Life's "Boatlife Life Calk" trade dress. Plaintiff also sought removal from sale, recall from all vendors and destruction of all infringing products.

A finding of likelihood of confusion in an infringement action does not automatically compel the issuance of an injunction. *Jim Beam Brands Co. v. Beamish & Crawford Ltd.,* 937 F.2d 729, 737 (2d Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1169, 117 L.Ed.2d 415 (1992). Moreover, the "relief granted should be no broader than necessary to cure the effects of the harm caused." *George Basch Co.,* 968 F.2d 1532, 1542 (2d Cir.1992); *Soltex Polymer Corp. v. Fortex Indus., Inc.,* 832 F.2d 1325, 1329 (2d Cir.1987). As stated above, Life has neither proven actual damages nor evidenced actual consumer confusion. Plaintiff has voluntarily abandoned its trade dress. Consequently, Life is not entitled to any form of injunctive relief.

13. In all "exceptional cases," the court has the discretion to award reasonable attorney fees to the prevailing party. 15 U.S.C. § 1117(a). "Exceptional cases" have been defined to comprise of acts which are characterized as willful or made in bad-faith. *See Alpo Petfoods, Inc.,* 913 F.2d at 971; *Burma–Bibas, Inc. v. Excelled Leather Coat Corp.,* 584 F.Supp. 1214, 1218 (1984) (trademark); *Playboy Enters., Inc. v. Chuckleberry Publishing Inc.,* 511 F.Supp. 486, 496 (S.D.N.Y.1981), *aff'd,* 687 F.2d 563 (2d. Cir. 1982). Moreover, proof of monetary damages is a valuable factor in assessing whether the case is extraordinary. *Berkshire Fashions, Inc. v. Sara Lee Corp.,* 729 F.Supp. 21, 23 (S.D.N.Y.1990); *cf. Farrar v. Hobby,* —— U.S. ——, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (holding that a civil rights plaintiff who sought $17 million in compensatory damages but who won only $1 nominal damages was not entitled to an award of attorney's fees).

This Court has found that defendant's conduct was not willful or intentionally deceptive. Moreover, Life failed to offer proof of causation or damages, or to successfully advance any theory entitling Plaintiff to Defendant's profits. Thus, Plaintiff is not entitled to attorney fees.

14. In order for a plaintiff to obtain injunctive relief under N.Y. General Business

Law § 368–d[2], the trade dress "must be 'very' or 'substantially' similar and that, absent such similarity, there can be no viable claim of dilution." *Mead Data Cent., Inc. v. Toyota Motor Sales, Inc.,* 875 F.2d 1026, 1029 (2d Cir.1989); *Jaret Int'l, Inc. v. Promotion in Motion, Inc.,* 826 F.Supp. 69, 76–77 (1993). Trade dress "dilution" refers to "the whittling away of an established ... [trade dress'] selling power and value through its unauthorized use by others upon dissimilar products." 1954 N.Y.Legis.Ann. 49.

Although Star Brite imitated certain aspects of Life's trade dress, there was no proof regarding the "whittling away" of Life's trade dress. Moreover, Plaintiff voluntarily abandoned the "Boatlife Life Calk" trade dress. Thus, an injunction under § 368–d will not be awarded.

15. Plaintiff is entitled only to an award of nominal damages representing plaintiff's technical success in proving a trade dress infringement. Accordingly, plaintiff is awarded one dollar.

SO ORDERED.

---

**2.** N.Y. General Business Law § 368–d (McKinney 1988):

Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.