**LIFE INDUSTRIES CORPORATION,**
Plaintiff–Appellee,

v.

**STAR BRITE DISTRIBUTING,**
INC., Defendant–Appellant.

No. 1644, Docket 93–9151.

United States Court of Appeals,
Second Circuit.

Argued May 19, 1994.

Decided July 19, 1994.

As Amended Aug. 18, 1994.

Murray Schaffer, Mineola, NY (Bauer & Schaffer, of counsel), for plaintiff-appellee.

Kenneth W. Shapiro, Fort Lauderdale, FL (Berger, Shapiro & Davis, P.C., Fort Lauderdale, FL, Moritt, Hock & Hamroff, Hempstead, NY, Sharon I. Feder, of counsel), for defendant-appellant.

Before: LUMBARD, MESKILL, and MINER, Circuit Judges.

LUMBARD, Circuit Judge:

Star Brite Distributing, Inc. appeals a September 30, 1993 judgment of the Eastern District of New York (Wexler, *J.*), enjoining Star Brite from manufacturing and advertising a boat caulking product in its then-current packaging. The district court found the packaging to infringe the trade dress of the marine-care product line of Life Industries Corp. The Star Brite product, like the Life products, was packaged in a functional tubular cartridge having a yellow background with the product name in large red print and a black field at the top edge containing white print. The district court found a likelihood that consumers would confuse Star Brite's product for one of Life's products. We remand with directions to vacate the injunction and the award on nominal damages.

## I.

Life and Star Brite compete in the field of chemical maintenance products for boats. Life is a New York corporation with its principal place of business in Old Bethpage, New York. Star Brite is a Florida corporation with its principal place of business in Fort Lauderdale, Florida.

Since 1943, Life has used a yellow and black color scheme in its packaging. Since 1965, it has manufactured and sold a line of products under the trademark "BoatLIFE" and a polysulfide boat caulking product in that line under the trademark "Life Calk." Life is the leading supplier of boat caulking. Star Brite has competed in the field since 1971, and has sold a polysulfide boat caulking product since 1985. Star Brite has always used the colors yellow and black in its packaging, but has also used many other colors; no exclusive or distinctive packaging can be identified with Star Brite.

Polysulfide boat caulking is essentially the same material no matter who sells it. It is packaged in tubular disposable cartridges from which it is dispensed with the aid of a caulking gun. The shape of the cartridges is generic and functional, corresponding to the shape of caulking guns. Caulking products are inexpensive items used in boat repairs, and little care is exercised by consumers when purchasing.

Until 1991, the Life Calk cartridge trade dress comprised a yellow background and, from the top of the cartridge downward:[1] a black rectangle along the top edge containing the term "BoatLIFE" in white stylized print, the product name in large red width-wise block print, a black silhouette of two boats on a white rectangular field, additional information in black print, and a black wavy band (representing water) around the bottom edge containing the logo "FOR THE *LIFE* OF YOUR BOAT" in white stylized print. This old Life Calk design is shown in Figure 1 below.

In 1991, Life changed its packaging for Life Calk. The new Life Calk cartridge design still is yellow and black, but otherwise differs from the old design. The background is half black (the top half, with the bottom border curving down and to the left) and half yellow (the remainder); the black rectangle at the top is replaced by a thin white rectangular border containing "BoatLIFE" and

---

1. For proper orientation, the cartridge should be understood as standing on end with the nozzle pointing up at the "top."

"FOR THE LIFE OF YOUR BOAT" in white stylized print separated by a pair of wavy yellow and red lines; the words "Life Calk" are in white print of a changed style; black and red stripes run upward and to the right under the product name; the silhouetted boats are gone; and the wavy black band around the bottom is changed to a straight black band and contains no logo. This new Life Calk design is shown in Figure 2 below.

The BoatLIFE product line includes several other products packaged in cartridges. The trade dress of those other products is consistent with the old Life Calk design. It comprises, from the top of the cartridges downward: a black field with "BoatLife" in white stylized print, the product name in large block print, a black silhouette of two boats against a rectangular field, additional information in black print, and a black wavy band (representing water) around the bottom edge containing the logo "FOR THE *LIFE* OF YOUR BOAT" in white stylized print. One of these products is "Polyurethane Adhesive Sealant," for which the background is yellow and the product-name print is in red on a white rectangular field. Another product is "Life Seal," for which the background is yellow and the product-name print is in white on a red rectangular field. A third product is "Silicone Rubber," for which the background is white, the product-name print is red and the background for the silhouetted boats is yellow. These designs are visible in Figure 3 below.

In 1985, Star Brite introduced its boat caulking product. From 1985 to 1988, the product was named "Deck Caulk" and was packaged in white plastic cartridges blister-wrapped on a yellow cardboard backing. In 1988, Star Brite renamed the product "Boat Caulk," redesigned the cartridge, and eliminated the blister-wrap. This 1988 design comprised a fiber cartridge with a yellow background and, from the top of the cartridge downward: a black band around the top edge containing "Star brite" in white print, the product name in large red lengthwise block print most of the way down the cartridge, and the word "Polysulfide" in small black lengthwise print. The design did not include a picture of boats, additional in-

formation in black print or a black wavy band at the bottom representing water and containing a logo in white print. The 1988 design is shown in Figure 4 below.

In 1991 or 1992, Star Brite changed its cartridge back to plastic and altered the design. This 1992 design comprised a yellow background and, from the top of the cartridge downward: a white band of bare plastic tube around the top edge; a black band containing "Star brite" in white print; the product name in large red lengthwise block print most of the way down the cartridge; the words "POLYSULFIDE" and "QUICK CURE FORMULA" in black, medium-size lengthwise print on either side of the product name; and a white band of bare plastic tube around the bottom edge. The 1992 design is shown in Figure 5 below.

Life first learned of Star Brite's product in 1987, when the original blister-wrapped packaging was still being used. Star Brite then introduced its 1988 design. In March 1990, Life sent Star Brite a cease and desist letter alleging that the 1988 design infringed Life's trade dress.

In May 1991, Life filed a complaint in the district court. In October 1991, Life amended its complaint to add Ocean Bio–Chem, Inc. as a defendant. Ocean Bio–Chem, a Florida corporation with its principal place of business in Fort Lauderdale, is Star Brite's parent. In the amended complaint, Life alleged that its BoatLIFE product line packaging is a distinctive and publicly recognized trade dress, that Star Brite's Boat Caulk packaging was confusingly similar to the BoatLIFE packaging and that Star Brite adopted its packaging intentionally to trade on Life's good will, in violation of the Lanham Act, § 43(a), 15 U.S.C. § 1125(a) (1988), and New York State trade law, N.Y.Gen.Bus. Law § 368–d (McKinney 1984). Life sought treble damages, injunctive relief, surrender or destruction of infringing items, an accounting and attorney's fees.

In December 1992, a bench trial was held before Judge Wexler. Life presented testimony from Grace Louise Schmidt, its president and chief executive officer. At the close of Life's case, Star Brite and Ocean Bio–Chem moved to dismiss. The district court

granted Ocean Bio–Chem's motion. Star Brite then presented testimony from Peter Dornau, its president. In July 1993, the district court issued findings of fact and conclusions of law. *Life Indus. Corp. v. Ocean Bio–Chem, Inc.*, 827 F.Supp. 926 (E.D.N.Y. 1993). The court held that the old Life Calk trade dress was inherently distinctive, *id.* at 931, and that there was a "strong likelihood of confusion" between the old Life Calk and Star Brite Boat Calk trade dresses, *id.* at 932. Five factors underlay the court's likelihood of confusion determination: (1) the old Life Calk trade dress was strong; (2) there are significant similarities between the old Life Calk and Star Brite Boat Caulk trade dresses; (3) Dornau was aware of the old Life Calk trade dress and Star Brite deliberately imitated it for the purpose of trading on Life's good will; (4) Life and Star Brite compete in the same market for the same consumers; and (5) the products are inexpensive and consumers are unlikely to exercise care in purchasing.

Regarding damages, Schmidt testified that Life's sales had dropped 30% since Star Brite's introduction of the 1988 design. But Life submitted no other proof of damages. Dornau testified that Star Brite makes no profit—and indeed loses money—on Boat Caulk. The district court awarded only nominal damages of one dollar because Life's proof was lacking. The court denied injunctive relief on the ground that Life's 1991 packaging change constituted abandonment of its trade dress. And the court denied attorney's fees because Star Brite had not engaged in "willful deception."

In August 1993, Life moved to amend the judgment to obtain injunctive relief and attorney's fees. Life asserted that the 1991 packaging change was made only to the Life Calk product and not to the rest of the BoatLIFE product line, that the change did not constitute abandonment of the BoatLIFE product line trade dress, and that the likelihood of confusion was therefore ongoing. Star Brite opposed the motion, partly contending that in 1991 Life changed the packaging for all BoatLIFE products and thereby abandoned the trade dress. Schmidt had indeed testified that no BoatLIFE products were domestically distributed any longer with the old design, although she characterized the complete changeover as test marketing.

In September 1993, the district court issued amended findings of fact and conclusions of law, granting injunctive relief but again denying attorney's fees. *Life Indus. Corp. v. Star Brite Distrib., Inc.*, 832 F.Supp. 54 (E.D.N.Y.1993). The court reconsidered the question whether Life's 1991 packaging change constituted abandonment. The court found that Schmidt's testimony, "in the context of all the other evidence adduced at trial," showed that Life changed its trade dress only with respect to Life Calk and not "many of its other marine products." The court concluded that Life had not abandoned the BoatLIFE product line trade dress, and the court proceeded to find a likelihood of confusion:

> [A]lthough [Life's] current packaging for its Boatlife Life Calk ... is not similar to the packaging of Star Brite's Boat Caulk, this Court finds a likelihood of consumer confusion regarding whether Boat Caulk is a Life product because Boat Caulk's trade dress is very similar to the trade dress used by various of Life's marine products.

The court "permanently enjoined [Star Brite] from manufacturing and advertising Boat Caulk in its current packaging."

## II.

Star Brite asserts that the district court effectively granted Life a property interest in the colors yellow and black. We do not agree with that interpretation of the district court's decision, but we do remand with directions to vacate the injunction for the following reasons.

Two observations deserve note at the outset. First, Star Brite has made no meaningful attempt to appeal the district court's factual finding that Life continued its old trade dress after 1991 on products other than Life Calk. We accept that finding as true. Second, the district court enjoined only the packaging that was "current" when the court issued its amended findings of fact and conclusions of law. We accordingly understand the injunction to apply only to the 1992 de-

sign that Star Brite adopted after the beginning of this action, and not the 1988 design that Life accused at the beginning of the action.

▆▆▆ A trade dress plaintiff must establish a distinctive trade dress and a likelihood of confusion. We agree with the district court that Life's BoatLIFE product line trade dress is distinctive. *See Paddington Corp. v. Attiki Importers & Distribs., Inc.,* 996 F.2d 577, 584 (2d Cir.1993) (finding distinctiveness based on "[t]he tone and layout of the colors, the style and size of the lettering, and, most important, the overall appearance of [a] bottle's labeling").

Our disagreement with the district court concerns the likelihood of confusion. Such a finding depends on numerous factors, eight of which are set forth in *Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 492, 495 (2d Cir.), *cert. denied,* 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961). As the district court recognized, five are especially pertinent here: the strength of the trade dress; the degree of similarity between the marks; the proximity of the products; the defendant's good faith; and the sophistication of the buyers. To those we add the cost of the product and actual confusion.

▆▆▆ Life's trade dress is strong. It is distinctive, arbitrary and fanciful; although the individual elements of the trade dress are plain and descriptive, their manner of combination is unique. The trade dress also is long-used.

There are significant similarities between the Star Brite and BoatLIFE trade dresses. The common elements are a yellow or white background, large red (or white on red) block print for the product name and a black field containing white print at the top edge of the cartridge. Even the hues of yellow and red are similar. Yet there are significant dissimilarities as well. Relatively speaking, the BoatLIFE trade dress is sophisticated and the Star Brite trade dress is generic. The BoatLIFE dress includes a prominent picture of boats, a wavy black band at the bottom containing a stylish logo, and considerable informational print. The Star Brite dress includes none of those. In addition, the Star Brite product name is a generic "Boat Caulk" rather than a somewhat fanciful "Life Calk"; the Star Brite product name runs lengthwise most of the way down the cartridge; prominent medium-sized black capital print appears on both sides of the name; and the label extends neither from top to bottom nor all the way around the cartridge, leaving visible significant portions of bare white plastic tube. In sum, the Life and Star Brite trade dresses share some similarities, but create different overall visual impressions.

The evidence at trial regarding Star Brite's good faith was conflicting. Dornau maintained that his company had not intentionally imitated the BoatLIFE trade dress or intended to appropriate Life's good will. But he admitted prior knowledge of the BoatLIFE dress; his testimony indicated that Star Brite tried to match the hues of the BoatLIFE dress and failed to do so only because of uncertainties in the labeling process; his testimony indicated that there are blank white portions in the 1992 design only because Star Brite does not fully control the labeling process; and evidence of other Star Brite product packaging supported the district court's finding that Star Brite's color selection followed industry leaders' trade dresses rather than any Star Brite color code.

The evidence on the last point is especially telling. Star Brite's sealant line includes three products that Dornau testified are packaged according to a color code: the polysulfide at issue here is the "yellow" product; a polyurethane is the "blue" product; and a silicone is the "red" product. Dornau explained that these colors were chosen to distinguish the products from one another. But the evidence suggested in two ways that the true reason for the color scheme was imitation of industry leaders. First, the colors of each product track the colors of the industry leader in each product. Star Brite even uses the designation "8200" for its polyurethane, which tracks the designation "5200" that industry leader 3M uses. Second, the arrangements of colors on Star Brite sealant packagings are not uniform, and instead they track the arrangements of colors on industry lead-

ers' packagings. For example, Star Brite's "yellow" product merits that designation because it has a yellow background; the rest of the design comprises the product name in red print and a black band around the top containing "Star brite" in white print. If Star Brite truly followed its own color code, the "blue" product would have a blue background with the product name in red print and a black band around the top. It does not. It has a white background with blue print and a blue band around the top, which approximates a reverse image of 3M's packaging of a blue background with white print. There is much to support the district court's finding that the rhyme and reason of Star Brite's packaging is not a Star Brite color code, but imitation of industry leaders, including Life.

■ The district court addressed the sophistication of buyers factor by considering the inexpensive nature of the products (about $6 per cartridge) and concluding that nobody devotes much attention to the act of purchasing. The cost of the product is a valid consideration in analyzing likelihood of confusion because consumers are likely to be less careful when purchasing cheap items. The cheap and disposable nature of boat caulking cartridges favors likelihood of confusion.

■ Other evidence, however, showed boat caulking buyers to be sophisticated. They usually are owners of large, expensive boats with wood decks. This weighs against likelihood of confusion.

■ Life failed to present any evidence of actual confusion. Although such evidence is difficult to obtain and is not a prerequisite to finding likelihood of confusion, its absence nevertheless weighs against that finding. *McGregor–Doniger Inc. v. Drizzle Inc.*, 599 F.2d 1126, 1136 (2d Cir.1979). It is totally absent here.

The balance of considerations is in Star Brite's favor. Star Brite's imitation raises a presumption that it "intended to create a confusing similarity of appearance and succeeded." *Warner Bros. Inc. v. American Broadcasting Cos.*, 720 F.2d 231, 247 (2d Cir.1983). But at bottom, both the details and the overall appearances of the two trade dresses contrast in the same way that name brand packagings contrast with generic or "no frills" packagings. Careful inspection is not required for differences to be revealed. The differences are manifest; in contrast to Life's distinctive and busy trade dress, Star Brite's trade dress consists essentially of a plain-as-possible product name, lengthwise product-name print most of the way down the cartridge and barely any other print or graphics. Its generic appearance is different both overall and in many particulars from the BoatLIFE product line's distinctive appearance.

Remanded for further proceedings, with directions to vacate the injunction and the award of nominal damages.