**ARCHE, INC., Plaintiff,**

v.

**AZALEIA, U.S.A., INC., et ano., Defendants.**

**No. 93 Civ. 0817 (LAK).**

United States District Court, S.D. New York.

April 12, 1995.

Brooks Banker, Jr. and Barry G. Magidoff, Abberley Kooiman, New York City, for plaintiff.

Leonard J. Santisi and Adam Brookman, Curtis, Morris & Safford, P.C., New York City, for defendants.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Plaintiff, a French manufacturer of ladies' footwear, claims that defendants, a Brazilian footwear manufacturer and its U.S. distributor, have violated their rights under the Lanham Act, among other legal doctrines, by imitating the trade dress of plaintiff's so-called P-sole shoes. The matter is before the Court on defendants' motions *in limine.* Defendants seek to exclude plaintiff's consumer survey, including the testimony of the interviewer and eight interview respondents, on the ground that plaintiff failed to comply with discovery requirements and, insofar as the survey is concerned, on the added ground that the methodology employed in the survey renders it so unreliable that it should not be placed before the jury. They claim also that the survey respondents' testimony should be excluded on the theory that it reflects "manufactured" evidence. Finally, they seek to bar testimony as to any instances of actual confusion from a number of consumer witnesses and people connected with plaintiff and its affiliates.

### *The Survey*

■ Surveys frequently are used in Lanham Act and other cases in which consumer perceptions and attitudes are at issue. They usually are conducted by exposing respondents to a stimulus (for example, a product or advertisement) in circumstances different from those in which the stimulus ordinarily is encountered and purchased. The surveyor then uses statistical methods to draw inferences about the probable reaction of the relevant universe of people from the answers of the respondents. *See generally* Shari Seidman Diamond, *Reference Guide on Survey Research, in* REFERENCE MANUAL ON SCIENTIFIC EVIDENCE 221, 225–26 (Federal Judicial Center 1994). The quantitative results of such surveys, e.g., the specific proportion of respondents "confused" in the experimental setting, play an important and sometimes dispositive part in determining the outcome of litigation. 4 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 32.54[1][c] (1994) (hereinafter cited as MCCARTHY). Properly designed and executed, surveys can provide valuable insight into such central issues as the existence and extent of confusion. *See generally id.* § 32.46. Poorly designed and poorly executed, they can be a positive detriment by causing confusion while shedding little light on the subject at hand. Defendants claim that plaintiff's survey is so clearly deficient that it should be excluded altogether.

The methodology employed here bears little resemblance to the more scientifically conducted surveys often seen in litigation such as this. Plaintiff's counsel designed a questionnaire and sent one of their employees, Deborah Goldberg, a part-time typist, drama student and actress, into Washington Square Park, which is located within blocks of one of plaintiff's retail stores. Over a two day period, she approached a number of people who, she said, looked as if they could afford plaintiff's shoes, which sell at prices considerably higher than defendants'. Ms. Goldberg, who was shod in defendants' shoes, asked the well-to-do passersby whether they could identify the shoes she was wearing. Although she had a questionnaire designed by counsel, she did not necessarily ask the questions as written. All told, she interviewed forty-six people. That she hoped to find people who identified defendants' product as Arche shoes is evident both from the selection of higher income subjects and from the questionnaire, which instructed her to try to enlist persons giving the desired "right" answer as witnesses.

Defendants correctly argue that the methodology used in this survey failed to conform to accepted survey techniques. As their expert, a former director of survey research for General Foods Corporation, points out, the sample of respondents interviewed was not representative of any reproducible group because no objective selection criteria were used. The use of only a single location, while not of itself fatal, is subject to criticism because the location selected was near one of plaintiff's stores and thus may have biased the result in plaintiff's favor. The failure to

ask the questions as written makes cumulation of responses suspect. The fact that the interviewer knew the purpose of the survey and, indeed, had an interest in obtaining one response rather than another is far from desirable. Even the choice of the sample universe was skewed by the focus on apparently higher income respondents. *See, e.g., Universal City Studios, Inc. v. Nintendo Co.,* 746 F.2d 112, 118 (2d Cir.1984); *Toys "R" Us, Inc. v. Canarsie Kiddie Shop, Inc.,* 559 F.Supp. 1189, 1205 (E.D.N.Y.1983); 4 MCCARTHY § 32.50.

While methodological defects in surveys usually go to the weight rather than the admissibility of the evidence,[1] there comes a point where the probative value of the survey is exceeded substantially by its prejudicial effect and potential for confusion and waste of time. *See* FED.R.EV. 403. To whatever extent plaintiff is proposing to use this evidence for the purpose of demonstrating the extent of any confusion, which is not clear at this stage, the evidence crosses that line.[2] Given the lack of a proper universe and sample, the lack of reproducibility, the poor choice of location, and the potential bias introduced by the choice of interviewer, among other methodological defects, this survey in my view has no significant value in establishing the proportion of consumers, if any, likely to confuse defendants' products with plaintiff's. Accordingly, the cumulative survey results and any opinion evidence based upon them is excluded. Plaintiff will not be permitted to adduce evidence that any given proportion of the respondents approached by Ms. Goldberg identified defendants' shoes as those of the plaintiff.

### The Survey Respondents and the Interviewer

■ The next question is whether Ms. Goldberg and eight of the people whom she interviewed may testify with respect to any actual confusion. I see no sufficient reason why they should not.

Plaintiff proposes to have the eight respondents and Ms. Goldberg testify in substance to their encounters in the park and, presumably, to the respondents having mistaken defendants' shoes for plaintiff's. Defendants argue that such evidence is not probative of actual confusion because the situation in which the respondents encountered Ms. Goldberg did not realistically reflect point-of-sale or post-sale circumstances. Treating these episodes as incidents of actual confusion, they argue, would permit plaintiffs in such cases to "manufacture" incidents of actual confusion. They rely on Judge Tenney's opinion in *Reebok International Ltd. v. K–Mart Corp.,* 849 F.Supp. 252 (S.D.N.Y.1994), *vacated as moot,* No. 92 Civ. 8871, 1994 WL 733616, 1994 U.S.Dist. LEXIS 19145 (S.D.N.Y. Dec. 28, 1994).

In *Reebok,* the plaintiff sought to introduce the live testimony of two respondents who had been interviewed in a mall intercept study, as well as written declarations from several others, in an effort to prove actual confusion. The Court excluded the evidence on the grounds that the mall intercept interviews were inherently artificial situations, that receiving such evidence would "allow[ ] plaintiffs to manufacture 'incidents' of actual confusion," and that allowing testimony of individual respondents would allow plaintiffs to prevail on the issue of actual confusion even if "the survey results failed to indicate a statistically significant likelihood of confusion ..." *Id.* at 274.

On the other hand, the Trademark Trial and Appeal Board has come out the other way. In *Blue Cross and Blue Shield Association v. Harvard Community Health Plan Inc.,* 17 U.S.P.Q.2d 1075 (TTAB 1990), the Board held that statements by survey respondents were evidence of actual confusion, even if the survey methodology was so deficient as to preclude receipt of the survey itself for the purpose of establishing the degree of confusion in the population. *Id.* at 1078 n. 7.

---

1. *See, e.g., Mobil Oil Corp. v. Pegasus Petroleum Corp.,* 818 F.2d 254 (2d Cir.1987).

2. Plaintiff says that it intends to elicit "the words spoken to [the respondents] by Ms. Goldberg and the responses they made." The pretrial order summary of her proposed testimony is considerably broader, albeit vague. Plaintiff does not disavow any intention to adduce the quantitative results of the survey.

In resolving this question, it is useful to focus on why the issue is important. As defendants have changed their designs, the case about to be tried is for damages. Commentators frequently have noted that "the public policy and theoretical basis underlying monetary awards in trademark cases have received inadequate judicial attention and have remained confused and undefined." *See* 3 MCCARTHY § 30.24[2]. While a likelihood of confusion typically suffices for injunctive relief, courts frequently are reluctant to award damages without "something more." *Id.* Evidence of actual confusion usually is the added ingredient that results in a damage award. *Id.* §§ 30.24[2], 30.25[4], 30.27[1][b]. Indeed, in this Circuit, actual confusion is a necessary prerequisite to an award of damages, although its existence may be presumed in cases of intentionally deceptive conduct. *See, e.g., George Basch Co. v. Blue Coral, Inc.,* 968 F.2d 1532, 1537 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 510, 121 L.Ed.2d 445 (1992); *Resource Developers, Inc. v. Statue of Liberty–Ellis Island Foundation, Inc.,* 926 F.2d 134, 139 (2d Cir.1991) (dictum). Hence, the question whether the survey respondents may testify to their reactions when Ms. Goldberg approached them in the park and, if so, whether their responses are evidence of actual confusion bears on whether plaintiff may recover damages in this case.

The basic point, it seems to me, is that plaintiffs in cases like these ought to recover damages if there is a sufficient likelihood that they in fact were injured by the defendants' conduct. *See* RESTATEMENT OF THE LAW OF UNFAIR COMPETITION § 36(3) & *comment h* (Tent. Draft No. 3 1991). The cases holding that actual confusion is required say nothing different; "actual confusion" seems to me a shorthand way of saying that a plaintiff may recover only if the trier of fact finds, by a preponderance of the evidence, that people actually were misled as, for example, by being deceived into buying someone else's product rather than that of the plaintiff. Survey evidence typically is regarded as cir-

cumstantial evidence of actual confusion.[3] *See generally* 4 MCCARTHY § 32.54[1][a], at 32–235. And if the survey is circumstantial evidence of actual confusion, at least as much must be said of the individual survey responses. Accordingly, if evidence by these survey respondents would have any tendency to establish that some people probably were confused as to the source of defendants' shoes, then the evidence is relevant and admissible, *see* FED.R.EV. 401, 402, subject of course to Rule 403.

It seems to me that the concerns raised in *Reebok,* while pertinent, do not warrant exclusion, at least on the basis of the presentation thus far. The fact that the Washington Square Park interviews were artificial situations is something that the jury can evaluate readily in assessing whether it is more likely than not that plaintiff lost sales as a result of defendants' apparent copying. The risk that respondents' answers will be used in preference to a survey, the overall results of which are unfavorable to the proponent of the respondents, can be controlled and, in any case, does not appear to be a real issue in this case. And labelling the evidence "manufactured" does not advance the analysis. Almost any survey "manufactures" evidence in some sense, but that does not preclude the receipt of properly conducted surveys because those surveys bear, at least circumstantially, on the issues for decision. The same can be true with respondent interviews. In consequence, defendants' motion to preclude plaintiff from calling the survey respondents and Ms. Goldberg is denied at this time. As I have not heard the evidence, this ruling is without prejudice to renewal at trial and does not pass on any Rule 403 objection. Plaintiff is directed to make an offer of proof out of the presence of the jury with respect to such testimony before calling each witness.

### The Consumer and Affiliated Witnesses

■ Defendants move to exclude any testimony concerning actual consumer confusion by three consumer witnesses (Geri Bondan-

---

**3.** Of course, the closer the survey technique comes to replicating the experience of actual potential consumers, the more weight ordinarily is accorded to the survey and the more appropri-

ate it may be to treat the survey results as direct, rather than circumstantial, evidence of actual confusion. 4 MCCARTHY § 32.48[1], 2 *id.* § 23.02[2][e].

za, Michele Breier and Sara Horowitz) and by a number of other witnesses who are employees or customers of Arche or have had, directly or indirectly, some affiliation or connection with it in the past (the "Affiliated Witnesses"). They assert that such evidence should be precluded as a sanction for plaintiff's alleged violation of FED.R.CIV.P. 26(e).

In April 1993, defendants served an interrogatory calling upon plaintiff to identify anyone alleged to have been confused between plaintiff's and defendants' shoes and to provide certain other information. Arche shortly thereafter responded that instances of actual confusion at the retail level had been reported to it, that it did not yet have the information requested, and that it would provide the information when it became available. The interrogatory answer never was supplemented.[4] In consequence, defendants never were told in discovery whether they had to meet evidence of instances of actual confusion, apart from what they learned of Ms. Goldberg's sojourn in Washington Square Park, if indeed that is properly so characterized.

It is not clear from the pretrial order whether plaintiff proposes to adduce testimony from any of these witnesses that should have been provided in response to the interrogatory. Plaintiff, however, resists any order of preclusion, thus suggesting that Arche does so intend.

Plaintiff does not directly dispute the contention that any information regarding witnesses to instances of actual consumer confusion should have been disclosed in response to the interrogatory or in a supplement thereto. It simply argues that defendants had an opportunity to depose all of these witnesses. It may not so easily avoid its responsibilities.[5]

Having served the interrogatory, defendants were entitled to know whether plaintiff intended to call witnesses to instances of actual consumer confusion and, if so, the requested information concerning each. That information was important to permit defendants to decide which depositions to take in order to prepare the case for trial on an economical basis. To suggest, as plaintiff in substance does, that defendants should have deposed a broad range of people to find out whether they had knowledge of any actual consumer confusion mocks the discovery rules.

The factors relevant to determining sanctions for failure to supplement the interrogatory answer are the explanation for the failure, the importance of the testimony, the need for time to meet the testimony, and the possibility of a continuance. *Outley v. City of New York*, 837 F.2d 587, 590 (2d Cir.1988). Here, any testimony concerning instances of actual consumer confusion would be quite significant for the reasons outlined above. No excuse has been offered by plaintiff for the failure to supplement the interrogatory answer. The deposition testimony of Ms. Verbrugghen, *supra* n. 4, was evasive and disregarded Arche's obligations under Rule 30(b)(6). A continuance is inappropriate, as this is at least the third trial setting (dated back to 1993) in this case already and plaintiff failed either to specify which of, and to what extent, these witnesses would testify to instances of actual confusion or to tender them for examination in the two months since defendants made this motion. Balancing these factors, I grant defendants' motion to the extent of precluding any testimony by these witnesses with respect to instances of actual confusion unless plaintiff can demonstrate that the information neither was known nor should have been known to plaintiff or its counsel prior to the date of this order.

---

**4.** In October 1993, shortly before the discovery deadline, defendants conducted a Rule 30(b)(6) deposition of Martine Verbrugghen, an officer of plaintiff, who was designated to testify on behalf of the company on a variety of subjects including the identity of anticipated trial witnesses. When defendants sought to elicit information concerning the identity of anticipated witnesses, she testified that she did not knew who Arche expected to call at trial. Defendants' counsel directed her not to answer questions concerning conversations with counsel concerning trial witnesses.

**5.** Plaintiff's argument that the motion should be denied because defendants deposed the three consumer witnesses in 1993 is without merit, as the depositions did not deal with the subject of any instances of actual confusion.

*Conclusion*

In sum, defendants' motions are granted to the extent that plaintiff is precluded from adducing (a) the cumulative survey results and any opinion testimony based thereon and (b) testimony from the consumer and Affiliated Witnesses concerning any instances of actual consumer confusion to the extent described above. The motions otherwise are denied on the basis previously outlined.

SO ORDERED.