**Neville EVANS, Plaintiff,**

v.

**THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY, et al., Defendants.**

**No. 00 CIV. 5753(LAK).**

United States District Court,
S.D. New York.

June 13, 2001.

Stephen Mitchell, for Plaintiff.

Megan Lee, Milton H. Pachter, New York City, for Port Authority Defendants.

## MEMORANDUM OPINION

KAPLAN, District Judge.

This employment discrimination action has been marked by unusual acrimony and by an unusual number of applications to the Court concerning discovery difficulties born of that strife. The Port Authority defendants (hereinafter "PA") now have moved, pursuant to Fed.R.Civ.P. 16(f) and 37, to preclude plaintiff from offering testimony from certain witnesses identified in plaintiff's long overdue answers to interrogatories.

### Facts

This Court held an initial pretrial conference on September 25, 2000 at which it directed that discovery be completed by March 25, 2001. PA promptly served interrogatories, dated October 17, 2000, which sought the identity of all witnesses with knowledge or information relevant to the subject matter of this action and the aspects of the matter concerning which each was knowledgeable.[1] Plaintiff did not answer those interrogatories.

On January 12, 2001, the Court held another pretrial conference during which plaintiff's counsel represented, in response to a question concerning the overdue interrogatory answers, that he had prepared the answers and would mail them that day.[2] Later that day, the Court entered a written order directing plaintiff to respond to the interrogatories as well as PA's document requests no later than January 15, 2001.[3] Plaintiff, however, did not comply with that order.[4]

At the deposition of plaintiff on January 18, 2001, plaintiff's counsel presented defense counsel with an untitled, unsworn list of names that plaintiff wished to refer to during the deposition.[5] At no relevant time did plaintiff's counsel ever represent that this list was a response to the interrogatories.[6]

On March 5, 2001, PA notified the Court that plaintiff still had not answered the interrogatories or the document request.[7] On the following day, the Court extended the discovery cutoff until May 11, 2001, stating that no further extensions would be granted.[8]

On April 11, 2001, plaintiff's counsel provided PA with a document entitled "Neville Evans Potential Witness List" that contained 38 names,[9] none of which had appeared on

---

1. Lee Aff. ¶ 3 & Ex. A.

2. *Id.* ¶ 4.

3. Order, Jan. 12, 2001, ¶ 1.

4. Lee Aff. ¶ 4.

5. *Id.* ¶¶ 5–6 & Ex. E.

6. *Id.* ¶ 6.

7. *Id.* ¶ 7.

8. Endorsement, Mar. 6, 2001.

9. Lee Aff. ¶ 9 & Ex. H.

PA's brief, although not its affidavit, asserts that the 38 names were gathered by plaintiff's counsel from documents produced by PA to plaintiff's counsel in January 2001 in another case in response to a request for a list of all complaints of

the list of names to which plaintiff referred at his deposition.[10] The document did not constitute a satisfactory response to the October 2000 interrogatories because the list (a) contained names only of people whom plaintiff perhaps would call as opposed to names of persons with knowledge or information concerning the subject matter of the case—in other words, it perhaps omitted names of persons known to plaintiff to have information unfavorable to his position, (b) failed to state the aspects of the matter concerning which each was knowledgeable, and (c) was unsworn. Possibly in response to PA pointing this out, plaintiff's counsel then asserted that the Court had excused him from responding to the interrogatories.[11] He subsequently stated in a letter to the Court that this occurred in at a conference "[s]hortly after the defendant's interrogatories were posed." [12]

On April 17, 2001, the Court held a conference on the record in response to PA's letter complaining of plaintiff's refusal to answer the interrogatories and his counsel's claim that he was not required to do so. Plaintiff's counsel insisted that the Court had told him that plaintiff did not have to answer the interrogatories and that PA could ask the plaintiff for the information at his deposition.[13] This assertion is not accurate. As PA's counsel states, the Court never said any such thing.[14] Quite the contrary—it entered a written order requiring responses to the interrogatories.

Finally, plaintiff on April 25, 2001 faxed responses to the interrogatories to PA counsel. The response identified 93 persons—33 of the 38 identified in the April 11 list and 60 other names. In response to the portion of the interrogatories that sought the subject matter of the knowledge of each witness, plaintiff responded identically for all 93 witnesses: "Discrimination at the workplace, Mr. Evans' job performance, witness to Evans' discriminatory treatment."

PA made this motion on May 15, 2001. Opposing papers were due on May 29, 2001. None have been filed.

### Discussion

Rule 37(b)(2) empowers a district court to impose such sanctions as are just for the failure of a party to comply with a discovery order, including the striking of pleadings or parts thereof, deeming facts to be established in accordance with the claim of the party obtaining the order, and precluding the offending party from introducing designated matters in evidence.

Here, the plaintiff never satisfactorily answered the interrogatories. The first effort that even charitably might be called a partial response was his tender of the list of 38 potential witnesses for plaintiff in April 2001, six months after the answers were due and three months after the date by which responses were ordered by the Court. That effort was transparently evasive, not only because the list did not respond fully to the interrogatories, but also because it appears simply to have been a list of prior complainants against the Port Authority. And while the motive need not be established, there is every reason to believe that plaintiff was trying to avoid identifying persons with

discrimination filed against PA in any court. PA Mem. 6.

10. *Compare* Lee Aff. Ex. H *with id.* Ex. E.

11. *Id.* ¶ 9.

12. Letter, Stephen T. Mitchell to Court, Apr. 12, 2001, at 1.

13. Tr., Apr. 17, 2001, at 4–5.

14. In general, this Court does not have a reporter present for routine pretrial conferences absent a request by a party. But the evidence, quite apart from the Court's clear recollection, is unambiguous.

Following the service of the interrogatories, the first conference held by the Court occurred on January 12, 2001, the date on which the Court, far from excusing responses, ordered plaintiff to respond to the interrogatories. Since there was no conference between the service of the interrogatories on October 17, 2000 and January 12, 2001, the Court could not possibly have excused plaintiff from answering them at a conference "shortly after" the interrogatories were served. Indeed, PA's counsel, in a letter dated March 5, 2001, complained that plaintiff had not yet answered the interrogatories, and plaintiff's counsel did not dispute this in his March 7 and 9, 2001 responses.

knowledge of the pertinent events until after the discovery deadline or, at least, until so late in the discovery period that PA would be seriously prejudiced in seeking to investigate the witnesses and take their depositions. In any case, apart from the erroneous assertion that the Court excused plaintiff from answering the interrogatories, plaintiff has made no effort to justify his actions. Indeed, even if plaintiff's conduct prior to the April 17, 2001 conference were ignored and his excuse credited, counsel has offered no justification whatever for identifying 38 potential witnesses early in April and then, on April 25, expanding the list to 93. That was patent obstructionism.[15]

This kind of behavior cannot be tolerated. Defendants were entitled to know many months ago the names of persons constituting the universe of potential witnesses in order to make intelligent decisions about whom to interview and depose in order to prepare for trial.[16] The plaintiff thwarted that effort. And "[w]hen a party seeks to frustrate this design by disobeying discovery orders, thereby preventing disclosure of facts essential to an adjudication on the merits, severe sanctions are appropriate." [17]

"There are two basic limitations upon a district court's discretion in imposing sanctions pursuant to Rule 37(b)(2). The rule expressly requires that the sanctions must be 'just'; and the sanction must relate to the particular claim to which the discovery order was addressed." [18] By seeking the sanction of precluding the plaintiff from calling witnesses whom he should have identified earlier, PA carefully has tailored the requested relief to the particular discovery order that plaintiff violated and to the precise manner in which he violated it. Plaintiff frustrated PA's ability to obtain timely disclosure of the names of potential witnesses in the case. It is fitting—and certainly just—that plaintiff be precluded from calling as witnesses the

persons belatedly identified inasmuch as his failure has prejudiced PA in its ability to prepare for trial.

The question remains whether plaintiff should be foreclosed from calling any of the 93 witnesses on the theory that all should have been identified, as the Court had ordered, by January 15, or some narrower subset. Insofar as plaintiff's January list, although not a response to the interrogatories in form or in substance, identified individuals later identified in untimely interrogatory responses, there is a case for overlooking or dealing leniently with the technical deficiencies and allowing plaintiff to call them although they were not properly identified for months later. The goal here is a resolution on the merits, and the PA had reason to know that those individuals might have relevant knowledge. The Court will not preclude on this ground testimony from the 18 persons whose names appeared both on the January and April 25th lists. There is no excuse, however, for plaintiff's failure to disclose the other 75 names substantially earlier.

The captiousness of plaintiff's behavior is well illustrated by focusing on the early April list of 38 names. According to PA's brief, the list of 38 names turned over early in April consisted of names of complainants in other discrimination cases against PA taken from documents PA had produced to plaintiff's counsel three months earlier. There was no effort to set forth what knowledge any of them may have had that was relevant to this case, thus frustrating any serious effort to decide which to pursue. And even putting aside any question of relevancy, there was no excuse for plaintiff's failure to respond with these 38 names in January rather than waiting to April.

In all of the circumstances, the PA is entitled to the relief it seeks except as to the

---

**15.** The Court finds that the plaintiff's actions were wilful. Such a finding would be appropriate simply on his failure to respond to this motion. But there is far more here to ground the finding.

**16.** *See Arche, Inc. v. Azaleia, U.S.A., Inc.,* 882 F.Supp. 334, 338 (S.D.N.Y.1995).

**17.** *Daval Steel Prods. v. M/V Fakredine,* 951 F.2d 1357, 1365 (2d Cir.1991).

**18.** *Id.* at 1366 (citing *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites,* 456 U.S. 694, 707, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982)).

18 names that appeared on both the January and the April 25th lists.

*Conclusion*

For the foregoing reasons, the motion is granted to the extent that plaintiff is precluded from offering evidence, either at trial or on any motion for summary judgment, from any of the 93 persons identified in his belated responses to interrogatories except for those whose names appeared on both the January and the April 25th lists. Plaintiff should not regard this ruling as determining that any of those persons has relevant information to give. Further, plaintiff's counsel, on or before June 20, 2001, shall file an affidavit setting forth the name of each of the 18 whom he intends to call at trial and a full summary of the proposed testimony of each. Failure to do so may result in dismissal of the action.

SO ORDERED.